IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on the Defendant Sukup Manufacturing Co.'s (Sukup) Motion to Compel Plaintiff to Answer Interrogatories Nos. 1, 7, and 10 and Verify all Supplemental Answers (d/e 51) (Motion).  For the reasons set forth below, the Motion is ALLOWED in part.

On August 22, 2005, Sukup served Plaintiff GSI Group, Inc. (GSI) with its first set of interrogatories.  <u>Motion</u>, Exhibit A, <u>Sukup Manufacturing Co.'s First Set of Interrogatory Nos. 1-10 to the GSI Group, Inc. (Interrogatories)</u>.  Sukup asked GSI in Interrogatory 1:

> State fully, on a yearly basis, according to model designation, code designation or other identifying designation, the accounting information which shows, proves and/or relates to GSI sales and profits for each year since January 1, 1999, for each kind of accused products; including stating:

    (a)    the total number of units of the accused product(s) sold, and the sales dollars and unit sales price for such units for each accounting period;

    (b)    the total fixed cost and variable costs for accounting period;

    (c)    explaining which costs are assigned or allocated or otherwise pro-rated to sales of said products including explaining in detail the formula or method used to determine the amount assigned, allocated or pro-rated; and

    (d)    stating the marginal profit for each accounting period.

Interrogatories, at 3.

In response, GSI stated that its expert witness reports would provide information responsive to this interrogatory. GSI also provided documents from which GSI stated that Sukup could secure the requested information. Sukup objected that GSI should be required to identify the specific documents that will provide the information requested.

GSI has now provided a verified response that identifies trial balances by specific bates page numbers. Opposition to Defendant's Motion to Compel (d/e 51) Plaintiff to Answer Interrogatory Nos. 1, 7 and 9 and to Verify all Supplemental Interrogatory Answers (d/e 62) (Opposition), Exhibit 1, The GSI Group, Inc.'s First Supplemental Responses to Sukup Manufacturing Company's First Set of interrogatory Nos. 1-10 to the GSI Group, Inc. (Supplemental Interrogatory Response), at 3. The

Supplemental Interrogatory Response also lists 33 computer CD disks containing invoices for all sales for the last six years of products covered by the patents-in-suit.  The response states that, "The CDs GSI 22- GSI 20 and GSI 31- GSI 33 contain summaries of the sales of the patented products sold by GSA for the last 6 years and include the selling price and the cost of such products so that the profit margins on these products may be determined."  Supplemental Interrogatory Responses, at 3-4.

Sukup asked GSI in Interrogatory No. 7, "State the reasons why GSI did not pursue an infringement suit against SUKUP for SUKUP's grain bin access door and grain dryer burner with burner cone prior to January of 2005."  Interrogatories, at 5.  GSI responded,

> This interrogatory seeks information which is privileged and/or involves attorney work product.  Therefore, GSI chooses not to waive its attorney/client privilege by answering this interrogatory.
>
> As discussed with Sukup at settlement conferences held during the spring of 2005, while GSI did suspect that Sukup's burner cone did infringe the '525 patent, GSI did not have actual evidence as to the construction and operation of Sukup's burner cone until after the Complaint in this litigation had been filed and prior to the time the Amended Complaint was filed.

Supplemental Interrogatory Response, at 13-14.

Sukup asked GSI in Interrogatory No. 10,

> Set forth a complete chronology of the inventions claimed in the patents-in-suit from the time of conception to the present describing all facts which occurred in the development and the

date on which they occurred including but not limited to the date of conception, reduction to practice, first public use and/or disclosure, offer for sale, and first sale, and identifying all persons involved having knowledge of these events by name and current address.

<u>Interrogatories</u>, at 6.

GSI has now responded,

> Because GSI acquired U.S. Patents 6,073,364, 6,076,276, 6,073,367 and 6,233,843 relating to the tower dryers were acquired from Farm Fans, Inc., GSI is without knowledge as to the conception, reduction to practice, first public use and/or disclosure, offer for sale, and first sale of the tower dryers described in such tower dryer patents.
>
> With regard to U.S. Patent 5,135,721, the subject matter of such patent was invented, conceived and reduced to practice by Ronald Bestwick in the months immediately preceding the filing date (June 14, 1991) of the '721 patent. The first public use and/or disclosure and/or the first offer for sale of the patented bin door took place on or about February, 1991 when the door was displayed at the National Farm Machinery Show in Louisville KY. **The invention of the '271 patent was conceived prior to 1989, as evidenced by drawings of the bin door dates as early as May 24, 1989, C. Production No. GSI 841. Certain drawings of components of the patented bin door are dated at least as early as July 5, 1989 and identified by Production Nos. GSI 1335-1350.**
>
> **In addition, in the spring of 1990, GSI contracted with the University of Illinois to conduct structural testing of the bin door, as evidenced by the following documents, GSI 843-846**
>
> With regard to U.S. Patent 5,400,525, the subject matter of such patent was invented, conceived and reduced practice by Randal E. Sheley in the months immediately preceding the filing date (January 14, 1994) of the '525 patent. The first public use and/or disclosure and/or the first offer for sale of the

>patented Bernard took place on or about February, 1994 when this burner was displayed at the National Farm Machinery Show in Louisville, KY. **GSI has not been able to locate drawings relating to the conception and actual reduction to practice of the burner cone intervention.**

<u>Supplemental Interrogatory Response</u>, at 16-17 (emphasis in the original).

Sukup asks the Court to compel more complete answers to these interrogatories. As set forth below, the Court agrees that GSI should give more complete information in response to Interrogatories 1 and 10. GSI is entitled to assert the attorney/client privilege to withhold additional information with respect to Interrogatory 7, but may not present any additional evidence in this proceeding to explain why it delayed bringing suit.

ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. The rule gives the district courts broad discretion in matters relating to discovery. See <u>Brown-Bey v. United States</u>, 720 F.2d 467, 470-471 (7th Cir.1983); <u>Eggleston v. Chicago Journeymen Plumbers' Local Union 130</u>, 657 F.2d 890, 902 (7th Cir.1981); <u>see also</u>, <u>Indianapolis Colts v. Mayor and City Council of Baltimore</u>, 775

F.2d 177, 183 (7th Cir.1985) (on review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion).  "[I]f there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible."  Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes, 2000 Amendment.

The federal discovery rules are to be construed broadly and liberally. Herbert v. Lando, 441 U.S. 153, 177 (1979); Jeffries v. LRP Publications, Inc., 184 F.R.D. 262, 263 (E.D .Pa. 1999).  The party opposing discovery has the burden of proving that the requested discovery should be disallowed. Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656 (D. Kan. 1999); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204, 207 (N.D. Ind. 1990); Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc., 730 F. Supp. 1165, 1186 (D. Mass. 1989).  With these considerations in mind, the Court will address each interrogatory and response at issue.

Interrogatory No. 1

In Interrogatory No. 1, Sukup makes a broad request for accounting information. GSI responded by stating that its expert witness would provide some of this information in accordance with the discovery schedule, and by providing documents from which the information requested could be ascertained. GSI may provide documents to respond to an interrogatory, but must specify the documents in sufficient detail so that Sukup can locate the specific information from which the answers may be ascertained. Fed. R. Civ. P. 33(d); see Govas v. Chalmers, 965 F.2d 298, 302 (7th Cir. 1992). In this case, GSI initially provided a mass of documents without giving any specific information concerning the location of responsive information within the mass. GSI has now identified its trial balances and summaries of all sales for the last six years. These documents should provide Sukup with sufficient information, when combined with GSI's expert reports, to answer the interrogatory.

GSI, however, must further specify the location and content of the summaries. GSI has identified the trial balances by bates numbers, but has not so identified the location of the summaries. GSI is directed to identify by bates page number (or other specific designation), the location of the summaries on CDs GSI 20- GSI 22 and GSI 31- GSI 33, and also

describe, by product, the sales that are the subject of each summary and the time frame covered by each summary.

GSI is also ordered to describe the organization of the invoices that have been provided on the 33 discs. This information appears to be largely back-up for the summaries, but Sukup is entitled to enough information about the organization of the invoices to be able to access the invoices to verify the summaries. Therefore, for each disc containing invoices, GSI is ordered to specify the time period of the invoices on the disc, the products that are the subject of the invoices, and the manner in which the invoices are organized on the disc.

Interrogatory No. 7

In Interrogatory No. 7, Sukup asks GSI to explain why it waited until January 2005 to bring suit. This information is relevant to Sukup's affirmative defense of laches, or may lead to evidence relevant to the defense. See Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir. 2004). GSI asserts attorney/client and work product privileges for information responsive to Sukup's interrogatory. GSI has not waived its privilege. See Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995). The Court, therefore, will not compel any additional responses to this interrogatory. GSI, however, will be limited in presenting any additional evidence in this proceeding to explain why it waited to bring suit.

The scope of this limitation should be determined by the District Court either through the pretrial order or through a motion in limine.

Interrogatory No. 10

In Interrogatory No. 10, Sukup asks the Court to compel GSI to give the complete chronology of the inventions claimed in the patents-in-suit. GSI has given some responsive information, and essentially says that it does not have additional information regarding the chronology. GSI cannot be required to answer a question it does not know; however, GSI must provide all responsive information known by its employees.

GSI does not appear to have included all relevant information in its response and does not appear to have asked all relevant employees for information responsive to this interrogatory. First, Sukup has submitted an email from GSI's counsel that contains additional responsive information. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel (d/e 64), Exhibit F. GSI must amend its answer, at a minimum, to include this additional information in its verified response.

Second, GSI has a number of employees that were involved in the development of some of these inventions, including Randal Sheley, Dennis Haynes, Ronald Bestwick, and David Morrison. GSI's response to the interrogatory does not indicate that it asked any of these employees for information that is responsive to this request. GSI appears to have only

asked for documents from these employees. GSI is, therefore, directed to ask these employees what they personally remember about the chronology of the development of these inventions and amend its answer to this interrogatory to include any additional responsive information provided by these employees.

THEREFORE, Defendant Sukup Manufacturing Co.'s (Sukup) Motion to Compel Plaintiff to Answer Interrogatories Nos. 1, 7 and 10 and Verify all Supplemental Answers (d/e 51) is ALLOWED in part. GSI Group, Inc. is directed to supplement its responses to Interrogatories 1 and 10 as set forth in this Opinion. The supplemental response shall be provided by April 19, 2006, and shall be verified in accordance with the Rules.

IT IS THEREFORE SO ORDERED.

ENTER:   April 5, 2006.

   FOR THE COURT:

         s/Byron G. Cudmore
        BYRON G. CUDMORE
     UNITED STATE MAGISTRATE JUDGE