## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Pending before the Court is Defendant's Motion to Compel Answers to Deposition Questions Asked of Burl Shuler (d/e 326) (Motion to Compel). Both Plaintiff GSI Group, Inc. (GSI) and Defendant Sukup Manufacturing Co. (Sukup) build and sell large capacity tower grain dryers. Among other things, the instant case involves patent infringement claims brought by GSI against Sukup relating to the grain dryers. The instant motion arises out of Sukup's August 16, 2007 deposition of Burl Shuler, GSI's Vice President of Sales & Administration, World Wide Grain Division. As set forth in detail below, the Motion to Compel is allowed, in part, and denied, in part.

On December 19, 2006, after discovery had closed on the patent issues, GSI filed with the United States Patent Office a Reissue Patent Application for Patent No. 6,076,276, one of the patents at issue in the instant lawsuit.  The Reissue Application proposed canceling claims 9 and 15 of  Patent No. 6,076,276.[1]  Based on the reissue application, Sukup sought leave to take four additional depositions after the close of discovery.  Motion to Take Depositions from McKinzie, Shuler, Nolte, Maginot (d/e 164) (Motion to Take Depositions).  Specifically, Sukup sought leave "to depose four (4) individuals referenced in GSI's application for reissue." Id., ¶ 16.  The Motion to Take Deposition asserted "Sukup should be allowed to conduct discovery regarding the application for reissue of one of the patents at the crux of the case." Id., ¶ 21.  Shuler, who had been previously deposed in connection with the instant matter, is the individual who signed the Reissue Application Declaration on behalf of GSI.  Id., Ex. A, p. 19-20.  GSI filed a Memorandum in Opposition to the Motion to Take Deposition from McKenzie, Shuler, Nolte, Maginot (*Consenting in Part and Opposing in Part*) (d/e 178).  GSI expressly "consented to Sukup's

---

[1]In the record, Patent No. 6,076,276 is on occasion referred to as either the '276 Patent or the 276 Patent.  For consistency, the Court will refer to it as the 276 Patent unless the reference is included in a direct quotation.

deposing Messers. Shuler, McKenzie and Maginot, as long as their depositions are limited to the subject matter involving the reissue of the '276 patent." Id. at 2. GSI noted that "[t]o the knowledge of GSI's undersigned counsel, Sukup has not objected to the depositions of Messers. Shuler, McKenzie and Maginot being limited to the subject matter of the reissue application" and further that  Sukup's motion "states that 'Sukup should be allowed to conduct discovery regarding the application for reissue of one of the patents at the crux of the case.'" Id.  Sukup then filed a reply, noting that "[i]n GSI's Memorandum, GSI consented to the depositions of Messrs. Shuler, McKenzie and Maginot concerning the subject matter involving the reissue application for the '276 Patent." Reply to Response to Motion to Take Deposition from McKenzie, Shuler, Nolte, Maginot (d/e 185), p. 1.

In a Text Order, dated February 21, 2007, this Court held as follows:

Before the Court is Defendant Sukup Manufacturing Co.'s Motion for Leave to Notice and Take Four Depositions 164, Plaintiff's response 178 consenting in part and opposing in part Defendant's Motion, and Defendant's Reply 185 as ordered by the Court. Based upon Plaintiff's consent, the depositions of Burl Shuler, Terry McKenzie, and Paul Maginot are ALLOWED. Nelson Nolte is an attorney who prepared and filed Plaintiff's reissue application concerning the '276 patent (d/e 178 at paragraph 4). The reissue application was filed 12/19/2006 only one day after fact discovery closed. Defendant avers that

certain aspects of the reissue application take positions
opposite to those taken by Plaintiff in this litigation (d/e 164 at
paragraphs 7-10). Over Plaintiff's objection, the deposition of
Nelson Nolte is also ALLOWED. The Court agrees with
Defendant that the Court cannot rule in a vacuum, prior to the
deposition, that every question to be asked will seek to elicit
privileged information. This Court reserves the decision on any
disputed assertions of privilege until the privilege has been
asserted at the deposition when the issue is then ripe for
consideration. Wherefore, Defendant's Motion 164 is
ALLOWED IN FULL.

Text Order, dated February 21, 2007.  On August 16, 2007, Sukup

deposed Shuler pursuant to this order.  According to Sukup, counsel for

GSI improperly instructed Shuler not to answer many questions during this

deposition.  The Motion to Compel seeks an order (1) compelling GSI to

produce Shuler for another deposition, (2) compelling Shuler "to answer all

questions," (3) declaring that privilege does not exist with respect to the

identities of GSI's counsel and the GSI personnel who have authorized

counsel to act on GSI's behalf, (4) declaring that privilege has been waived

with respect to several identified issues, and (5) directing counsel to refrain

from instructing Shuler not to answer based on the fact that Shuler would

be speculating.  Motion to Compel, p. 3.

As an initial matter, the Court notes that, in response to this Court's direction to provide a detailed reply, Sukup filed a chart listing the portions of transcript to which its motion is addressed, divided by category.  See Reply to Response to Motion to Compel Answers to Deposition Questions Asked of Burl Shuler (d/e 352) (Sukup's Reply), Ex. A ("the Chart").  The Court will address Sukup's challenges by category as set forth on this Chart and will reference the challenges by the question numbers 1 through 187 as assigned on the Chart.  The Court will first address the challenges that fall into only one  category and will then address the questions which implicate multiple categories.  The Court further notes that, under Fed. R. Civ. P. 30(c)(2), "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[2]

A.  Scope of the Shuler Deposition

Clearly, the four additional depositions authorized in this Court's Text Order, dated February 21, 2007 are limited in scope.  Sukup's Motion to Take Depositions expressly sought additional discovery regarding the application for reissue of Patent No. 6,076,276.  Motion to Take

---

[2]The Court notes that, prior to the 2007 Amendments to the Federal Rules of Civil Procedure, this language was found at Fed. R. Civ. P. 30(d)(1).

Depositions, ¶ 21.  GSI expressly consented to three of the additional

depositions, including one of Shuler, as long as the depositions were

limited to the subject matter involving the reissue of Patent No. 6,076,276.

The Court allowed the Motion to Take Depositions as it related to Shuler

based on GSI's consent.  Given this history, it is clear that the

supplemental Shuler deposition should be limited in scope to the issue of

the application for reissue of Patent No. 6,076,276, and this was the

Court's intent in allowing the Motion to Take Depositions.  Sukup's claim

that there was no limitation placed on the scope of the deposition fails.

Thus, under Fed. R. Civ. P. 30(c)(2), counsel for GSI could properly

instruct Shuler not to answer questions during the deposition that fell

outside its limited scope.  Sukup asserts in the alternative that all of the

challenged questions fell within the deposition's limited scope.  It is clear to

the Court that the scope of the deposition is not limited to the face of the

reissue application itself but rather extends to all matters arising out of the

application for reissue of Patent No. 6,076,276.  With this in mind, the

Court turns to Sukup's specific challenges as set forth in the Chart.

Categories I, II, and III as defined on the Chart involve challenges

relating to the scope of the Shuler deposition.  The Court notes that no

questions are designated solely as Category III, thus the Court will address

Category III infra in subsection C.  Sukup defines Category I as questions

relating to the decision to withdraw claims 9 and 15 including the timing of

GSI's knowledge of the invalidity of the patent and actions taken by it in

relation thereto.  As a general statement, this category clearly relates to the

reissue application issue.  Fifty-six of Sukup's challenges are characterized

as relating solely to Category I.  The Court has reviewed the portions of

transcripts associated with these challenges and finds as follows.[3]

Questions 28-39, 42-48, and 50-55 relate to a Declaration that Shuler

executed on January 9, 2006, in connection with the instant case.  See

Sealed Document, Attachments (d/e 328), Part 4, p. 9. Questions 28-39,

42-48, and 50-55, while addressing the Declaration, clearly arise because

of the reissue application, and they are relevant to the issue of the asserted

invalidity of claims 9 and 15. Thus, these questions fall within the scope of

the supplemental deposition, and the Motion to Compel is allowed with

respect to these questions.  Questions 58 through 61 relate to

representations made in connection with GSI's Opposition to Defendant's

---

[3]The Court notes an apparent typographical error on question 27.  Lines 13-16 on page 89 include a question that Shuler answered.  Thus, the Court will consider question 27 to be page 89, l. 6-12.

Motion for Partial Summary Judgment of Invalidity of Claims 9 and 15.  See
Sealed Document, Attachments (d/e 328), Part 4, p. 34.   These questions
are also within the scope of the supplemental declaration because they
clearly arise as a result of the reissue application and they are relevant to
the issue of the asserted invalidity of claims 9 and 15, and the Motion to
Compel is allowed in this respect as well.

Questions 145 through 151 relate to the Kan-Sun tower dryer.[4]
These questions relate to the reissue application and are relevant to the
issue of the asserted invalidity of claims 9 and 15.  The Motion to Compel
is allowed in this respect.  Questions 167 through175 relate to actions
taken or not taken by GSI in connection with the reissue application relating
to a 2005 press release and Sukup customers to whom GSI sent cease
and desist letters.  These questions  are clearly related to the reissue
application issue, and the Motion to Compel is allowed in this respect as
well.  Questions 183 through 187 also deal with the 2005 press release and
arise as a result of the reissue application.  The Motion to Compel is
allowed in this respect.

_____

[4]The Court notes that Sukup has designated question 145 as Category V on the
Chart.  However, the objection raised by GSI to this question at the deposition related to
the scope of the deposition and not attorney client privilege.  Thus, the Court will
consider question 145 in its analysis of scope.

Additionally, it is clear from their face that the following questions fall within the scope of the supplemental deposition: 40, 41, 49, and 56.  The Motion to Compel is allowed with respect to these questions.  Sukup, however, has failed to establish that the following questions fall within the scope of the supplemental deposition, and their relevancy to the reissue application is not clear on their face: 26, 27, and 57.  Thus, counsel's direction to the witness not to answer these three questions was proper, and the Motion to Compel is denied as it relates to these questions.

Sukup defines Category II as questions relating to the decision to seek reissue of the '276 Patent and not another patent, referenced as the '367 Patent.  As a general statement, this category falls within the scope of the supplemental deposition because it arises out of the reissue application.  Questions 3-16 and 18-24 are identified as Category II.  The Court has reviewed these questions and believes that they are reasonably related to the decision to seek reissue of the '276 Patent and not the '367 Patent.  Therefore, the Motion to Compel is allowed with respect to questions 3-16 and 18-24.

B.  Attorney-Client Privilege

Categories IV, V, and VI as defined on the Chart involve challenges relating to GSI's assertion of attorney client privilege.  The Seventh Circuit has adopted the following test to determine when the privilege exists: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.  See Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 531 (N.D. Ill. 2003).  "In addition to protecting communications from the client to the attorney, communications from the attorney to the client are privileged if they constitute legal advice or would reveal the substance of a client confidence-directly or indirectly." Id. (citing United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990)).  "The party claiming the privilege has the burden of proving all of its essential elements."  Id. (citation omitted).  At the outset, the Court notes that GSI has provided the Court with the Declaration of Burl A. Shuler Regarding his Knowledge of the Issues involved in the reissue of U.S. Patent 6,076,276, dated November 26, 2007.  Response to Sukup's Reply in Support of its

Motion to Compel Answers to Deposition Questions Asked of Burl Shuler,
Ex. 3.  Shuler avers that the only knowledge that he has regarding the
following issues came from consultation with GSI's attorneys:  the
prosecution of the tower dryer patents, GSI's reasons for seeking reissue
of the '276 patent, GSI's strategy in deciding whether to cancel Claims 9
and 15, the reasons that priority must be claimed in the reissue application,
what investigation was done surrounding the circumstances of the lost
priority claim, and the reason that GSI has not admitted that Claims 9 and
15 are invalid.  Id., ¶¶ 7, 8, 15 - 17.   Shuler further avers that he made
certain statements in connection with the reissue application that he
believed to be true based on facts made known to him through consultation
with GSI's attorneys, and that he still believes the identified statements to
be true.  Id., ¶ 10-11.  With this evidence in mind, the Court addresses the
various categories relating to attorney client privilege.

Sukup defines Category IV as the identity of individuals involved in
communications, including the identity of GSI representatives who
authorized official actions taken on behalf of GSI.  Question 1 queries
"What attorneys have you worked with in GSI's dealings with the patent
and trademark office?"  Shuler Dep., p. 52, l. 8-9.  GSI fails to demonstrate

that the answer to this question would implicate privileged information, and the Motion to Compel is allowed in this respect.  Similarly, GSI fails to demonstrate that question 139, which asks whether Shuler was the individual at GSI who has overseen the prosecution of the reissue application, and question 164, which asks who at GSI was supervising counsel with respect to the withdrawal of the request for a certificate of correction, would  implicate privileged information.  Neither of these questions involve confidential attorney-client communication, but rather they seek information relating to allocation of responsibilities within GSI.  Thus, the Motion to Compel is allowed with respect to these questions as well.

Questions 2, 17, 75-78, 87, 88, 92, 93, and 95, however, involve inquiry into the specific roles that various attorneys played in the representation, communications that Shuler made to attorneys in connection with the reissue application, and the identity of GSI employees who authorized aspects of the representation.  These questions implicate attorney client privilege.  The information that Shuler provided to the Trademark and Patent Office in connection with the reissue application did not include the substance of confidential communications in these areas.  It

is on this basis that the instant case is distinguishable from <u>Vardon Golf</u>, upon which Sukup relies.  In <u>Vardon Golf</u>, the plaintiff voluntarily disclosed portions of privileged attorney client communications in court filings opposing a motion to withdraw by its attorneys.  213 F.R.D. at 532-33. The <u>Vardon Golf</u> Court recognized the general principle that the attorney client privilege can be waived when a party shares confidential information with third parties.  <u>Id</u>. at 532.  The Court further noted that a party should not be allowed to exploit selective disclosures for tactical advantage.  <u>Id</u>.  The <u>Vardon Golf</u> Court held that the plaintiff voluntarily waived the attorney client privilege by disclosing portions of confidential communications.  In the instant case, Shuler did not disclose confidential communications on the reissue application.  The Seventh Circuit has recognized that "a client does not waive his attorney-client privilege merely by disclosing a subject which he had discussed with his attorney.  In order to waive the privilege, the client must disclose the communication with the attorney itself."  <u>United States v. O'Malley</u>, 786 F.2d 786, 794 (7th Cir. 1986) (internal quotations and citation omitted).  Therefore, the Motion to Compel is denied with respect to these questions.  Finally, the Court notes that Shuler eventually

answered question 165.  <u>See</u> <u>Shuler Dep.</u>, p. 183, l. 16-21.  Thus, the

Motion to Compel is denied as moot as it relates to question 165.

Sukup defines Category V as questions involving communications

that formed the factual basis for public records filed by GSI.  Questions 62

through 64 relate to a brief filed by GSI in opposition to a motion for

summary judgment relating to Claims 9 and 15 filed by Sukup in the instant

case.  These questions seek explanation for certain statements within the

filing and are protected by attorney client privilege.  Thus, the Motion to

Compel is denied as it relates to these questions.  Questions 65 through 70

relate to GSI's answers to interrogatories that were signed by Shuler.

Questions 65 through 67 and 70 implicate attorney client privilege and the

Motion to Compel is denied as it relates to these questions.  The Court

notes that, with respect to questions 68 and 69, in addition to asserting

attorney client privilege, Shuler stated that any answer would be pure

speculation on his part.  Thus, Shuler actually answered these questions,

and the Motion to Compel is denied as moot as it relates to them.

Question 74 asks whether there was an intervening investigation into

the validity of Claims 9 and 15 between the filing of the two summary

judgment motions and the filing of the reissue application.  GSI fails to

show that this question implicates attorney client privilege.  Thus, the Motion to Compel is allowed as it relates to this question.  Questions 79 through 81 and 83 through 85 relate to conversations that may have occurred concerning the reissue application.  Question 79 asks Shuler to identify all conversations of which he is aware concerning the reissue application, question 80 asks when Shuler had conversations relating to the reissue application, question 84 asks whether Shuler had conversations within GSI regarding the reissue application.  None of these questions require Shuler to divulge confidential attorney client communications; thus, they are outside the scope of the attorney client privilege and the Motion to Compel is allowed in this respect.  Questions 81, 83, and 85, however, ask Shuler to relate the substance of the conversations relating to the reissue application.  Question 83 seeks the substance of conversations with GSI attorneys concerning the reissue application.  This information clearly falls within the scope of attorney client privilege, and counsel for GSI properly instructed Shuler not to answer this question.  The information sought in Questions 81 and 85 may fall within the scope of the attorney client privilege; however, it is not clear from their face or from the record evidence that they do.  Thus, GSI has failed to

establish at this point that the privilege applies.  The Motion to Compel is allowed with respect to questions 81 and 85; however, GSI may assert attorney client privilege if applicable at the appropriate time in the subsequent deposition.  Similarly, question 86, which asks Shuler to divulge the research and investigation that he undertook in preparation for filing the reissue application, could fall within the scope of attorney client privilege but the complete applicability of the privilege is not clear from the record.  Thus, the Motion to Compel is allowed with respect to question 86, although GSI may again assert attorney-client privilege if applicable at the appropriate time in the subsequent deposition. Question 91, which asks why GSI filed the reissue application, is protected by the attorney client privilege.  Thus, GSI properly instructed Shuler not to answer this question and the Motion to Compel is denied as it relates to this question.

Questions 96 through 108 deal with the reissue application itself. Questions 96 through 105, 107, and 108 all require Shuler to divulge confidential attorney client communication and thus implicate the attorney client privilege.  The Motion to Compel is denied with respect to these questions.  Question 106, however, asks when Shuler learned that the 276 Patent was wholly or partly invalid.  This question does not necessitate the

disclosure of the substance of any confidential communication; thus, the Motion to Compel is allowed with respect to question 106.  Questions 110 through 112 relate to issues behind the validity of Claims 9 and 15. Question 113 seeks information regarding positions taken by GSI in the instant litigation.  All of these questions implicate the attorney client privilege; therefore, the Motion to Compel is denied with respect to questions 110 through 113.

The Court notes that Shuler eventually responded to question 117 by stating that, in addition to his assertion of attorney client privilege, he just did not know the answer.  Shuler Dep., p. 153, l. 1-2.  Similarly, Shuler answered question 127 in the affirmative.  Id., p. 158, l. 19-20.  Shuler eventually answered question 163 as well, by stating that he did not know whether a proffered statement was true.  Id., p. 177, l. 25.  Thus, Shuler actually answered these questions, and the Motion to Compel is denied as it relates to questions 117, 127 and 163.  Questions 118, 119, 121 through 123, 125, 128, 130 through 138, 140, 141, 143, 144,156 through 161, and 166 all require Shuler to divulge the substance of confidential communications and thus implicate the attorney client privilege.  The Motion to Compel is denied with respect to these questions.

Sukup defines Category VI as questions involving actions taken by GSI and the motives in taking those actions.  Question 71 asks why certain material was submitted with the reissue application, question 72 asks why GSI opposed Sukup's summary judgment motions in the instant litigation, and question 73 asks why GSI changed its mind about the validity of the 276 Patent.  Similarly, question 109 asks why GSI is canceling Claims 9 and 15 of the 276 Patent, question 116 asks why GSI requested to cancel claims 9 and 15, and question 120 asks why GSI engaged in certain analysis with respect to the reissue application.   Questions 114 and 115 inquire as to why certain information was not included in the reissue application, while questions 124,126, and 129 seek the basis for information that was included on the application. Question 142 asks why GSI is taking a certain position in the instant litigation.  The record reveals that the only information that Shuler  has on these matters results from confidential consultation with GSI attorneys. Therefore, they implicate the attorney client privilege, and the Motion to Compel is denied with respect to these questions.

Question 162 inquires as to why the reissue application was filed the day after discovery closed on the patent issues in this case.  Shuler clearly

answered twice that he did not know.  <u>Shuler Dep.</u>, p. 174, l. 7-8, 15-16.

Because Shuler answered this question, the Motion to Compel is denied in

this respect.  Questions 176 and 177 concern what type of investigation

was conducted after Sukup advised GSI of the Kan-Sun device.  These

questions require Shuler to divulge the substance of confidential

communications, and the Motion to Compel is denied in this respect.

Question 178, however, inquires as to discussions within GSI concerning

the Kan-Sun device as it related to the GSI tower dryer.  GSI fails to

demonstrate that this question necessarily requires the disclosure of

confidential attorney client information.  Thus, the Motion to Compel is

allowed with respect to question 178.

C.  Multiple Categories

Several questions involve multiple objections and implicate multiple

categories.  Sukup characterized question 82 as falling within Categories

IV and V, both of which involve the assertion of attorney client privilege.

Question 82 inquires as to whether Shuler  "ever talked with anyone at

Polster Lieder about the reissue application . . . ."  <u>Shuler Dep.</u>, p. 116, l.

19-20.  This question does not require Shuler to disclose the substance of

any confidential communication.  Thus, the attorney client privilege does not apply, and the Motion to Compel is allowed in this respect.

Questions 153 and 154 are identified as Categories I and V. Category I relates to the scope of the supplemental deposition while Category V relates to the attorney client privilege issue.  These questions relate to the Kan-Sun tower dryer as it relates to the reissue application. They are relevant to the issue of the asserted invalidity of claims 9 and 15 and fall within the scope of the supplemental deposition.   With respect to Category V, however, the Court finds that the information sought in questions 153 and 154 involves confidential communications and thus implicates the attorney client privilege.  Therefore, the instruction to Shuler to refrain from answering these questions was proper on this basis, and the Motion to Compel is denied as it relates to questions 153 and 154.

Questions 152, 155, and 179 through 182 are characterized as Categories I and VI.  Again, Category I relates to the scope of the definition.  Category VI involves the attorney client privilege.  Question 152 asks what investigation was conducted after GSI became aware of the Kan-Sun device.  Question 155 asks why Claims 9 and 15 were cancelled. While each of these questions falls within the scope of the supplemental

deposition, they both require Shuler to divulge the substance of confidential communications. Question 179 asks about positions that GSI took in the instant litigation.  Again, this falls within the scope of the supplemental deposition; however it requires Shuler to divulge information shielded by the attorney client privilege.  Questions 180 through 182 relate to actions taken or not taken by GSI prior to issuing the 2005 press release and sending cease and desist letters to Sukup customers.  These questions clearly arise because of the reissue application and, thus, fall within the scope of the supplemental deposition.  Once again, however, the information sought involves confidential communications that are shielded by the attorney client privilege.   Thus, the Motion to Compel is denied as it relates to these questions based on attorney client privilege.

Questions 89 and 90 are identified as Categories III and IV. Category III relates to the scope of the supplemental deposition.  Sukup defines Category III as questions relating to the claimed error that caused the perceived need to file the reissue application.  Again, as a general statement, this category falls within the scope of the supplemental deposition because it is clearly matter related to the reissue application. Both questions  are reasonably related to the decision to file the reissue

application and are thus within the scope of the supplemental deposition. With respect to Category IV, however, the Court finds that the information sought in questions 89 and 90 implicates attorney client privilege, because it relates to decisions made with respect to representation.  Therefore, the instruction to Shuler to refrain from answering these questions was proper on this basis, and the Motion to Compel is denied as it relates to questions 89 and 90.

D.  Questions which Call for Speculation

On page 3 of its Memorandum in Support of its Motion to Compel (d/e 327), Sukup asserts that, on eight occasions, counsel for GSI erroneously instructed Shuler not to answer questions if he would be speculating.  As Sukup correctly points out, this is not a proper basis for an attorney to instruct a deponent not to answer under Fed. R. Civ. P. 30(c)(2).  However, in appropriate circumstances, it acceptable for a deponent to answer that he or she would be speculating.  The Court notes that, of the eight identified references, only one, Shuler Dep. p. 80, l. 16-23, is included on the Chart, at question 25.  To the extent Sukup wishes to pursue its request to compel answers to the other seven questions identified on page 3 of Sukup's Memorandum in Support of its Motion to

Compel, the Court denies the request because, on each of these occasions the witness eventually answered the question.  Turning to question 25, the Court notes that the parties clarified, on the record at the deposition, that counsel for GSI was not instructing Shuler not to answer on the basis of speculation.  <u>Shuler Dep.</u>, p. 80 - 81.  Again, Shuler eventually answered question 25 and the Motion to Compel is, therefore, denied with respect to this question.  The Chart also identifies question 94 as a question that counsel for GSI improperly instructed the witness not to answer.  The Court notes that, while counsel for GSI stated that he objected to question 94 because it called for speculation, he expressly informed Shuler that he could answer if he knew the answer.  <u>Id</u>., p. 126, l. 18-20.  The deposition transcript, however, does not reflect any response by Shuler.  Because Shuler must be deposed again, the Court grants Sukup's request to ask question 94 again.

THEREFORE, Defendant's Motion to Compel Answers to Deposition Questions Asked of Burl Shuler (d/e 326) is ALLOWED, in part, and DENIED, in part.  GSI is compelled to produce Shuler for another deposition by 1/10/2008.  Shuler is compelled to answer the questions as set forth above.

IT IS THEREFORE SO ORDERED.

ENTER:   December 21, 2007

FOR THE COURT:

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE