IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE GSI GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-3011 |
| | ) |
| SUKUP MANUFACTURING CO., | ) |
| | ) |
| Defendant. | ) |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Sukup Manufacturing Company's (Sukup) Motion for Summary Judgment Barring Plaintiff From the Recovery of Lost Profits, and Alternatively Under the Entire Market Value Rule, Regarding US Patent No. 5,135,271 (d/e 451) (Motion 451). For the reasons set forth below, the Motion is DENIED.

BACKGROUND

This Motion concerns the possible damages that Plaintiff GSI Group, Inc. (GSI) can prove for Sukup's alleged infringement of US Patent 5,135,271 (271Patent) held by GSI. This Court previously determined that issues of fact exist regarding whether the 271 Patent is valid and whether

1

Sukup has infringed on the 271 Patent. <u>Opinion entered September 11, 2008 (d/e 667) (271 Infringement Opinion)</u>, at 42, 50. As discussed in detail in the 271 Infringement Opinion, the 271 Patent covers the mechanism for latching and unlatching grain bin doors and an improved design for pins used to integrate the door into the wall of the grain bin. <u>Id.</u>, at 2-15.

Sukup now asks the Court to enter partial summary judgment limiting the possible damages that GSI may recover, assuming liability is found. The Court, thus, assumes, for purposes of this Motion only, that Sukup would be found liable for infringement of the 271 Patent. If true, GSI seeks lost profits for the grain bins that Sukup sold using the infringing latching mechanism and pin design. GSI's expert Mark Hoffman puts this figure at $22,581,229.00 for the period from September 2002 to June 15, 2007. <u>Defendant Sukup Manufacturing Co.'s Motion to Strike Portions of the October 3, 2007 Report of Mark E. Hoffman (d/e 370)</u>, Exhibit A, <u>Supplemental Report of Mark E. Hoffman dated October 3, 2007 (Hoffman Supplemental Report)</u>, at 2. Sukup asks the Court to enter judgment that GSI should be limited to recovering a reasonable royalty for each latching mechanism and improved pin design sold by Sukup.

STATEMENT OF FACTS

The Court previously described in detail grain bin doors, the claimed invention covered by the 271 Patent, and the Sukup competing product. 271 Infringement Opinion, at 2-18. The Court will not repeat that discussion here.

From 1999 to 2007, GSI sold 26,203 grain bins containing the door latching mechanism and pins described in the 271 Patent (hereinafter GSI bins), for a total sales price of $261,585,474.00. Opposition to Defendant Sukup's Motion for Summary Judgment Barring Plaintiff from Recovery of Lost Profits and Alternatively Under Entire Market-Value Rule, d/e 451 (d/e 546) (Opposition), Exhibit 3, Declaration of Mark E. Hoffman Re: Defendant Sukup Manufacturing Company's (Sukup) Motion for Summary Judgment Barring Plaintiff From the Recovery of Lost Profits, and Alternatively Under the Entire Market Value Rule, Regarding US Patent No. 5,135,271 (d/e 451) (Hoffman Declaration), at 2. GSI sold 4,006 GSI bins in 2007. Id.

From 2001 to June 15, 2007, Sukup sold a total of 6,699 bins with the latching mechanism and pins accused of infringing on the 271 Patent (Sukup Bins), for a total sales price of $79,282,584.00. Of that total,

3

Sukup sold 1,703 Sukup bins in 2006 and 933 Sukup bins from January 1, 2007, through June 15, 2007. Id., at 3.

Several other companies market grain bins, including Brock/CTB, MFS(Stormor), Chief, Sioux Steel, Scafco, Conrad, and Westeel. Sukup Unsealed Summary Judgment Exhibits (d/e 461) (Sukup Unsealed Exhibits), Exhibit 148, Deposition of Harmon Towne, at 161-63. GSI's expert Towne opined that the products of several of these companies do not infringe on the 271 Patent. Id. GSI's expert Hoffman opined that the bins and doors produced by these companies were not acceptable substitutes for the GSI bin. Sukup Sealed Summary Judgement Exhibits (d/e 460) (Sukup Sealed Exhibits), Exhibit 99, Preliminary Report of Michael Hoffman, at 13-14. Hoffman relied on the deposition testimony of Burl Shuler, GSI's Vice President-Sales and Administration, and an expert witness in this case, to reach this conclusion. Id. Shuler has opined that the bins and doors currently marketed by such companies are not substitutes for GSI bins because the latches used by these other manufacturers do not incorporate a cam to provide leverage to force open a closed bin door. Opposition, Exhibit 2, Declaration of Burl A. Shuler in Opposition to Sukup's Motion for Summary Judgment (d/e #451) Barring Plaintiff From Recovery of Lost

4

Profits and Alternatively Under Entire Market-Value Rule (Shuler Declaration), ¶ 10.

Sukup also has submitted an e-mail dated February 22, 2006, sent by Brian Stahl, GSI's District Sales Manager in South Dakota (Stahl E-mail). The Stahl E-mail discussed lead times for filling orders for farm and commercial bins submitted to GSI. The e-mail states that new orders for farm bins, "will be scheduled after May 15th, 2006." Opposition, Exhibit 6, Declaration of Brian Stahl in Opposition to Sukup's Motion for Summary Judgment (d/e #451) Barring Plaintiff From Recovery of Lost Profits and Alternatively Under Entire Market-Value Rule, Exhibit A, Stahl E-mail, at 1-2. Later, the Stahl E-mail states, "Steel mill production/delivery to GSI facilities and GSI production capacities restrict us adding any new orders until that time." Id., at 2.[1] Shuler, however, stated in his Declaration, that GSI has the capacity to produce over 10,000 grain bins and doors per year, and that GSI has never been at the point of refusing new orders for bins.

---

[1] Sukup also submitted an article from a magazine. Sukup Unsealed Exhibits, Exhibit 135, Excerpt from June/July 2007 issue of Progressive Farmer. The article is hearsay and not competent to support a motion for summary judgment. Fed. R. Civ. P. 56(e). Sukup notes that the article is self-authenticating. Fed. R. Evid. 902(6). The article, even if authentic, is still hearsay absent an affidavit from the author attesting to the accuracy of the contents. No such affidavit has been submitted to the Court. The Court will not consider the article.

Shuler Declaration, ¶¶ 7-8.

## ANALYSIS

At summary judgment, Sukup must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to GSI. Any doubt as to the existence of a genuine issue for trial must be resolved against Sukup. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Sukup has met its burden, GSI must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, issues of fact exist regarding whether GSI is entitled to claim lost profits, assuming the 271 Patent is valid and Sukup is liable for infringing on the 271 Patent.

Assuming liability for infringement, GSI is entitled to recover, "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and as costs fixed by the court." 35 U.S.C. § 284.

The reasonable royalty reference in § 284 only sets a minimum for the damages that may be awarded. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1544-45 (Fed.Cir. 1995). GSI is entitled to damages that will fully compensate it for its injury, and these damages may include lost profits. Id.

To recover lost profits, GSI must present evidence that it would have made the claimed profits but for Sukup's infringement. Rite-Hite, 56 F.3d at 1545; Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978). GSI must present evidence that there was a reasonable probability that the sales would have happened but for the infringement. Rite-Hite, 56 F.3d at 1545. Four nonexclusive factors are used to show damages for profits that a patent holder would have earned but for the infringement: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profits that would have been made. Panduit, 575 F.2d at 1156.

GSI has evidence that there is a demand for the GSI bins. GSI sold over $260,000,000.00 worth of GSI bins from 1999 to 2007. From 2000

to 2007 Sukup sold over $79,000,000.00 of the infringing Sukup bins.[2] GSI's evidence also shows that GSI used the patented door as a marketing tool. When viewed in the light most favorable to GSI, the evidence of Sukup's sales of infringing bins is particularly telling because the sales have risen so rapidly. Sukup has experienced rapid increases in sales every year. See Hoffman Declaration, ¶ 5. This rapid rise in sales may indicate that Sukup's success is attributable to the infringement on the claimed invention. See Gyromat Corp. v. Champion Spark Plug Co.,735 F.2d 549, 552 (Fed.Cir. 1984). This evidence shows demand for the patented product.

Sukup argues that grain bins have many features, and GSI has not shown that the patented latching mechanism and pins are the reason for the demand for their product. Sukup also argues that its latching device has unique design features not found in the GSI latch. These observations only create issues of fact. The Court must read the evidence favorably to GSI at this time. When read in the light most favorable to GSI, the evidence shows that the claimed invention covered by the 271 Patent accounts for the demand for the product.

---

[2] For purposes of the Motion only, the Court assumes the Sukup bins are infringing. Thus, for purposes of the Motion only, the sale of the Sukup bins provides evidence of the demand for the claimed invention.

Sukup also argues that the evidence shows that the demand for grain bins is related to price rather than any particular aspect of either the Sukup or GSI bins. If price is the real factor driving sales, then the claimed invention covered by the 271 Patent is not a significant factor in the sales. <u>BIC Leisure Products, Inc. v. Windsurfing Intern., Inc.</u>, 1 F.3d 1214, 1218 (Fed. Cir. 1993). Sukup cites GSI's expert Hoffman's interviews with GSI sales retailers who complained that Sukup was competing successfully against GSI bins by lowering its prices below the retailers' costs. <u>Sukup Sealed Exhibits</u>, Exhibit 98, <u>Hoffman Supplemental Report</u>, at ¶¶ 37-38. These retailers, however, reported that Sukup was able to compete based on price because the Sukup bins had the claimed invention covered by the 271 Patent. If price was the driving factor, then grain bins that did not contain the claimed invention, such as Brock/CTB and MFS(Stormor), could compete with the GSI bins based on price. See <u>BIC Leisure Products</u>, 1 F.3d at 1218. Sukup has presented no evidence of effective price competition by these non-infringing products. GSI's evidence is sufficient to show an issue of fact concerning whether there is demand for the patented product.

GSI has also presented evidence that there is an absence of acceptable

non-infringing substitutes. Hoffman opined that there were no acceptable substitutes. Hoffman relied on Shuler's deposition testimony. Sukup argues that Shuler only discussed the market at the time of the development of the claimed invention in the late 1980's. Sukup argues that this evidence is not relevant to whether acceptable substitutes exist today. Motion 451, at 16. Shuler now, however, has opined in his Declaration that the same situation exists today; the non-infringing grain bins, such as Brock/CTB and MFS(Stormor), do not contain a latch that provides leverage to force the bin door open. Shuler Declaration, ¶ 10. This evidence is sufficient to support Hoffman's opinions and to create an issue of fact concerning whether there is an absence of acceptable non-infringing substitutes.

GSI has also presented evidence that it has the manufacturing and marketing capability to exploit the demand. Shuler states in his Declaration that GSI has ample production capacity to provide the number of Sukup bins sold by Sukup. The Stahl E-mail may be read to contradict Shuler, but the possible contradiction only creates an issue of fact.

GSI also has presented evidence of the amount of profits that would have been made. Hoffman opines that GSI lost profits of $22,581,229.00 for the period from September 2002 to June 15, 2007. His opinion is

sufficient to create an issue of fact.

In the alternative, Sukup argues that GSI is not entitled to calculate damages under the entire market value rule. The entire market value rule allows recovery of the lost profits of the entire apparatus containing both patented and unpatented parts when the patented and unpatented components are physically part of a single functional unit. Rite-Hite, 56 F.3d at 1550. The evidence, when viewed favorably to GSI, shows that GSI and Sukup only sell the claimed invention as part of a grain bin. Thus, the evidence, when viewed favorably to GSI, shows that the grain bin is a functional unit containing the claimed invention covered by the 271 Patent, along with other unpatented parts. Thus, GSI has demonstrated at least an issue of fact on whether it is entitled to recover for lost profits from the sale of grain bins under the entire market value rule.

Sukup argues GSI must present evidence that the patented feature formed the basis for consumers purchasing the entire apparatus. Some older Federal Circuit cases mention this as an element, although the Rite-Hite decision focuses on the question of whether the entire apparatus is a functional unit. Rite-Hite, 56 F.3d at 1550. Cf. Slimfold Mfg. Co., Inc. v. Kinkead Industries, Inc., 932 F.2d 1453, 1459, n.2 (Fed.Cir. 1991). To the

extent that the older cases are still viable, GSI has presented evidence on this issue. As discussed above, GSI has presented evidence of demand for the claimed invention under the first prong of the <u>Panduit</u> analysis. Those customers who want the claimed invention can only purchase the claimed invention as part of a grain bin because GSI and Sukup only sell the patented invention as part of a grain bin. Thus, GSI has presented evidence that the basis for consumer demand for GSI bins is the claimed invention. Issues of fact preclude summary judgment on the applicability of the entire market value rule.

THEREFORE, Defendant Sukup Manufacturing Company's Motion for Summary Judgment Barring Plaintiff From the Recovery of Lost Profits, and Alternatively Under the Entire Market Value Rule, Regarding US Patent No. 5,135,271 (d/e 451) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   September 16, 2008

    FOR THE COURT:

                              s/ Jeanne E. Scott
                              JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE