IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the following Motions for Partial Summary Judgment:

1. Plaintiff GSI Group, Inc.'s (GSI) Motion for Partial Summary Judgment that All of GSI's Tower Dryer Patents-In-Suit Are Valid (d/e 407) (Motion 407);

2. GSI's Motion for Partial Summary Judgment Against Defendant's Inequitable Conduct Affirmative Defense and Counterclaim, and for a Declaration of Enforceability, as to All GSI's Tower Dryer Patents-In-Suit (d/e 424) (Motion 424);

3. GSI's Motion for Partial Summary Judgment of Infringement of GSI's

1

Tower Dryer Patents by the Sukup Tower Dryer Installed at the Rosenwinkel Farm (d/e 438) (Motion 438);

4. Defendant Sukup Manufacturing Company's (Sukup) Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,076,276 (d/e 447) (Motion 447);

5. Defendant Sukup's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,073,367 (d/e 448) (Motion 448);

6. Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,076,276 (d/e 443) (Motion 443);

7. Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,073,367 (d/e 444) (Motion 444); and

8. Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patents Nos. 6,073,364 and 6,233,843 (d/e 445) (Motion 445).

All of these Motions concern GSI's claims that Sukup infringed on GSI's four patents for the sweep grain unloading device (Sweep Unloader) used in GSI's tower grain dryers, U.S. Patent No. 6,076,276 (276 Patent); U.S. Patent No. 6,073,367 (367 Patent); U.S. Patent No. 6,073,364 (364

Patent); and U.S. Patent No. 6,233,843 (843 Patent) (collectively the Tower Dryer Patents). GSI concedes that the 276 Patent is not currently valid. For the reasons set forth below, the Court finds that the 367 Patent also is not valid. The Court finds that the 364 Patent and the 843 Patent are valid, and that Sukup is not currently infringing on either the 364 Patent or the 843 Patent, but previously infringed on these two patents. Therefore:

(1) Motion 407 is withdrawn as to the 276 Patent, denied as to the 367 Patent, and allowed as to the 364 and 843 Patents;

(2) Motion 424 is allowed as to the 364 and 843 Patents, and denied as moot as to the 276 and 367 Patents;

(3) Motion 438 is allowed;

(4) Motion 447 is allowed;

(5) Motion 448 is allowed;

(6) Motion 443 is denied as moot;

(7) Motion 444 is denied as moot; and

(8) Motion 445 is allowed in part, and denied in part.

STATEMENT OF FACTS

The Court previously described tower grain dryers and the various off-loading devices, including the Sweep Unloader.  See Opinion entered July 27, 2007 (d/e 311) (Opinion 311), at 2-3.  The Court also discussed the development of the Sweep Unloader and the Tower Dryer Patents by a company known as ffi, Inc. (ffi).  Id., at 5-6.  In 2001, GSI acquired ffi, and with it, the Tower Dryer Patents.  The Court set forth the facts concerning ffi's sale of a tower dryer to Archer Daniels Midland in March 1996 at State Line, Indiana, and the subsequent installation of a sweep unloading device into that dryer later in 1996 (State Line Installation).  Id., at 3-6.  The Court will not restate that information in detail here.  In addition to the facts set forth in Opinion 311, the Court notes that one witness testified that the sweep unloading device was installed at the State Line Installation in July 2006, although others testified that the sweep unloading device was installed in September 2006.  Sukup Second Index of Sealed Exhibits (d/e 543), Exhibit 235, Excerpt of Deposition of Paul Peterson, at 39 (installation was in July 1996); but see Motion 407, Exhibit 2 (d/e 408), Deposition of Curtis Fankhauser, at 31-32 (installation was in fall 1996).

The Court also notes that spacers were added to the unloading device

in the fall of 1996. The spacers were placed between the wipers and the superstructure, or carousel, to which the wipers are attached. Before the spacers were added, debris became caught in the carousel. <u>Sukup First Index of Sealed Exhibits (d/e 461) (Sukup Sealed Exhibits)</u>, Exhibit 108, <u>Excerpt of Deposition of Paul Peterson</u>, at 37. The spacers were added to the design of the sweep unloading device shortly after the device was put into use at the State Line Installation. <u>Id.</u> GSI states that the testing of the sweep unloading device at the State Line Installation was completed in December 2006. <u>Motion 424, Statement of Undisputed Facts</u> ¶¶ 19-20.

On February 21, 1997, GSI filed an application for a patent for a device used to remove grain deposits within a hopper. <u>Motion 407</u>, Exhibit 1, <u>U.S. Patent 6,050,422 (422 Patent)</u>. The 422 Patent was issued on April 18, 2000. The 422 Patent covered a device that used a set of rotating wiper blades to clean a hopper, similar to the Sweep Unloader.

In April or May 1997, ffi placed an advertisement for its tower grain dryer in the trade publications FEED & SEED. The advertisement highlighted the new Sweep Unloader. The advertisement included pictures and diagrams of the Sweep Unloader. <u>Sukup Index of Unsealed Exhibits (d/e 461) (Sukup Unsealed Exhibits)</u>, Exhibit 65.

Ffi filed a provisional patent application for the Sweep Unloader on July 30, 1997 (Provisional Filing).  Ffi subsequently filed four non-provisional patent applications that matured into the Tower Dryer Patents. The 276 Patent covered the basic design for the Sweep Unloader.  <u>Sukup Unsealed Exhibits</u>, Exhibit 26, <u>U.S. Patent 6,076,276</u>.  The 367 Patent covered the design in the 276 Patent, but added the spacers between the wipers and the carousel.  <u>Sukup Unsealed Exhibits</u>, Exhibit 27, <u>U.S. Patent 6,073,367</u>.  The 364 Patent covered the use of ultra-high molecular weight resins on the wipers.  <u>Sukup Unsealed Exhibits</u>, Exhibit 25, <u>U.S. Patent 6,073,364</u>.  The 843 Patent covered the method of advancing grain in a tower dryer using the resin wipers claimed in the 364 Patent.  <u>Sukup Unsealed Exhibits</u>, Exhibit 29, <u>U.S. Patent 6,233,843</u>.

The ffi patent applications included a copy of a brochure of another grain dryer that used a sweep unloader.  A company called Butler Manufacturing marketed a line of grain dryers under the name Kan-Sun. At least some of the Kan-Sun dryers had a sweep system for unloading grain. Some of the inventors went to see a Kan-Sun dryer as part of their work in developing the ffi sweep unloader.  The inventors submitted a Kan-Sun brochure to the Patent and Trademark Office (PTO) as part of each

6

patent application. The brochure was all of the material in their possession that related to a Kan-Sun dryer with a sweep unloader. Motion 407, Exhibit 12 (d/e 409), Deposition of Terry McKenzie, at 37-39.

On October 13, 1998, ffi withdrew its claim of priority for the 276 Patent to the Provisional Filing. On December 18, 2007, at GSI's request, the PTO issued a Certificate of Correction for the 376 Patent deleting its claim of priority to the Provisional Filing. As a result, the effective filing date for the 276 and 367 Patents became July 29, 1998, the date that the 276 and 367 Patent applications were filed. GSI has filed a motion before the PTO to reinstate the Provisional Filing date as the filing priority date for the 276 Patent. That motion is still pending at this time. The July 30, 1997, date remains the effective filing date of the 364 and 843 Patents.

Sukup began marketing tower grain dryers in 2004. On October 12, 2004, Sukup sold and installed one sweep unloader at the Rosenwinkel Farm, located in Waterman, Illinois. According to GSI's expert David Morrison, the Sukup sweep unloading device infringed on the Tower Dryer Patents. Motion 438, Exhibit 18, Report of David Morrison, at 13-62.

GSI filed this suit on January 19, 2005. In response, Sukup redesigned its sweep unloading device to eliminate the use of ultra-high molecular

7

weight resins on the wipers. Sukup also replaced the wipers in the Rosenwinkel Farm dryer with the new design. Sukup Unsealed Exhibits, Exhibit 48, Declaration of Charles Sukup, at ¶¶ 8-11, 60. Sukup subsequently redesigned its sweep unloader two more times. Sukup does not currently sell any sweep unloading devices that include any resins. Id., at ¶ 60. This Court previously ruled that, under the facts of this case, GSI is not entitled to recover compensatory damages for infringement of the Tower Dryer Patents that occurred before the date of filing this action. Text Order entered July 19, 2006.

## ANALYSIS

At summary judgment, the movant must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial must be resolved against the movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a movant has met its burden, the non-moving party must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial.

Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

GSI concedes that the 276 Patent is not currently valid, and has withdrawn its request for summary judgment on its validity. GSI's Reply in Support of its Motion for Partial Summary Judgment that All of GSI's Tower Dryer Patents-In-Suit are Valid (d/e 407) (d/e 580), at 1. Sukup's Motion 447 is therefore allowed. The 276 Patent is currently invalid.

The 367 Patent is also invalid. A patent is not valid if the covered invention was offered for commercial sale more than a year before the effective date of the patent. 35 U.S.C. § 102(b). The 367 Patent covered the spacers between the wipers and the carousel. Those spacers were added to the design in the fall of 1996. The testing of the design was completed in 1996. The spacers, thus, were part of the sweep unloader design by the end of 1996. Ffi advertised the new sweep unloader in the FEED & SEED advertisement in the spring of 1997. The invention covered by the 367 Patent, thus, was offered for sale at that time. The effective date of the 367 Patent is currently July 29, 1998, more than a year after the covered invention was offered for sale. The 367 Patent is not currently valid.

The Court is not persuaded by GSI's protestations that the FEED &

SEED advertisement did not include the spacers. The spacers were added in 1996 shortly after testing began at the State Line Installation. GSI admits that the testing on the Sweep Unloader was completed by the end of 1996. Motion 424, Statement of Undisputed Facts, ¶ 19. The Sweep Unloader was offered for sale in the spring of 1997, more than a year before the filing date of the 367 Patent. The 367 Patent is invalid. Sukup's Motion 448 is allowed.

 The 364 and 843 Patents, however, are valid and enforceable. These patents have been issued, and so, are presumed valid. 35 U.S.C. § 282. Sukup bears the burden to present clear and convincing evidence that the two patents are invalid. EZ Dock v. Schafer Systems, Inc., 276 F.3d 1347, 1351 (Fed.Cir. 2002). Sukup argues that the State Line Installation of the sweep unloader in 1996 was a public use or commercial sale more than a year prior to the July 30, 1997, effective date for these two patents.

 An invention cannot be patented if it was in public use or offered for commercial sale more than a year before the patent application is filed. 35 U.S.C. §102. A public use includes a use by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor. Netscape Communications Corp. v. Konrad, 295 F.3d 1315,

1320 (Fed.Cir. 2002). A claimed invention has been made available for commercial sale if the claimed invention was offered for sale and, at the time of the offer, the claimed invention was ready for patenting. Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67-68 (1998).

An installation for experimental purposes, however, is not a public use or a commercial sale. Netscape Communications, 295 F.3d at 1320. Since GSI has asserted that the use was an experimental use, it must present evidence to support that position. Sukup argues that GSI must present convincing evidence of experimental use. Sukup is incorrect; GSI must present evidence that would prevent Sukup from meeting its burden of proof. Lisle Corp. v. A.J. Mfg. Co., 398 F.3d 1306, 1316 (Fed.Cir. 2005). The ultimate burden of proof remains on Sukup to show a public use or commercial sale more than a year before the effective date of the 364 and 843 Patents. EZ Dock, 276 F.3d at 1351-52.

The Court previously indicated that the State Line Installation in 1996 was an experimental use and not a public or commercial use. Opinion 311, at 17-18. The Court has carefully reviewed the parties' submissions with respect to the pending Motions and concludes that the State Line Installation was an experiment until at least the end of 1996 for the reasons

stated in Opinion 311. The State Line Installation, therefore, did not invalidate the 364 and 843 Patents.

Sukup also argues that the GSI scalper invalidated the 364 and 843 Patents. An invention, such as the GSI scalper, invalidates a patent if, inter alia, the inventor of the prior invention: (1) conceived of his invention before the conception of the invention covered by the patent, and (2) diligently reduced it to practice without abandoning, suppressing or concealing it. 35 U.S.C. § 102(g)(2). Sukup has presented no evidence to show that the inventor of the GSI scalper device conceived of his invention before the Sweep Unloader was invented. Sukup presents no evidence on when the GSI scalper was conceived. The only evidence presented is that the GSI scalper provisional application was filed in February 1997. The ffi Sweep Unloader design was completed in late 1996, before the filing of the GSI scalper provisional application. Sukup bears the burden here. It has failed to present evidence that the GSI scalper was conceived of before the ffi Sweep Unloader. Sukup, thus, failed to show that the GSI scalper was a prior invention that invalidated the 364 and 843 Patents. Sukup presents no other evidence to overcome the presumption of validity for the 364 and

12

843 Patents.[1]

GSI also asks for summary judgment on Sukup's inequitable conduct affirmative defense and counterclaim with respect to the Tower Dryer Patents. Inequitable conduct is an equitable matter that is committed to the discretion of this Court. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed.Cir. 1995). Patent applicants are required to prosecute patent applications in the PTO with candor, good faith, and honesty. Inequitable conduct occurs when: (1) a patent applicant misstates a material fact, fails to disclose a material fact, or submits false information to the PTO; coupled with (2) an intent to deceive. If a patent applicant engages in inequitable conduct, then the patent is invalid. The party raising the claim of inequitable conduct has the burden to prove the claim by clear and convincing evidence. Id.

Materiality is determined from the view of the reasonable Patent Examiner. Id., at 1179. Information is material when there is a substantial

---

[1] Sukup alludes to the Kan-Sun dryer as evidence that the 364 and 843 Patents were invalid because they were rendered obvious by the prior art. Defendant Sukup Manufacturing Co.'s Response to GSI's Motion for Partial Summary Judgment That All of GSI's Tower Dryer Patents-In-Suit Are Valid (d/e 407) (d/e 533), at 18; see 35 U.S.C. § 103. Sukup presents no evidence that Kan-Sun dryers used ultra-high weight molecular resins in their wipers, or that the addition of ultra-high weight molecular resins to such wiper blades was obvious. Absent any evidence, the presumption of validity holds. 35 U.S.C. § 282.

likelihood that a reasonable Examiner would have considered the information important in deciding whether to allow the application to issue as a patent. If the information is cumulative or not as pertinent as that considered by the examiner, then such information is not material. Id.. Intent to deceive may be proven by circumstantial evidence; however, the circumstantial evidence must demonstrate more than gross negligence. Id., at 1178.

Sukup presents evidence of three matters that it believes constitutes inequitable conduct: (1) ffi did not disclose the prior art of the Kan-Sun dryers that included sweep unloader systems to the PTO in its patent applications ; (2) ffi did not disclose the State Line Installation to the PTO in its patent applications; and (3) ffi/GSI did not disclose the prior art of the GSI scalper to the PTO in the patent application process.

Sukup fails to present evidence that ffi did not disclose the Kan-Sun dryer. Ffi included a Kan-Sun brochure in its patent applications to the PTO. It disclosed the existence of the Kan-Sun prior art. Sukup complains that ffi did not disclose enough information about the Kan-Sun dryer. The evidence is that ffi disclosed the information that its representatives had about the Kan-Sun dryer. Patent applicants are not required to conduct

14

searches for prior art. Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd., 394 F.3d 1348, 1351 (Fed.Cir. 2005). Ffi disclosed the information in its possession. There is no evidence of inequitable conduct with respect to this issue.

GSI admits that ffi failed to discuss the State Line Installation in its patent applications, but argues that Sukup has no clear and convincing evidence that: (1) the State Line Installation was material, and (2) ffi did not disclose the installation with the intent to deceive or mislead the PTO. The Court agrees. The experimental use did not affect the validity of the patent applications, and so its disclosure was of minimal significance. Sukup's only evidence on intent is the fact of the omission. The failure to disclose this experimental use does not, by itself, indicate any intent to deceive.

Sukup also argues that ffi should have disclosed the GSI scalper to the PTO. As discussed above, Sukup has failed to present evidence that the GSI scalper was invented before the Sweep Unloader. Absent evidence that the GSI scalper was invented first, Sukup cannot show that ffi's failure to disclose this matter to the PTO constitutes inequitable conduct.

Sukup argues that GSI should have disclosed the GSI scalper to the

15

PTO after it acquired ffi . GSI acquired ffi before the 364 and 843 Patents were issued in May 2001. Sukup argues that GSI knew that its own patented scalper was prior art relevant to patentability of the inventions covered by the 364 and 843 Patents, and so, should have disclosed this to the PTO while these two applications were pending. Sukup, however, has not presented any evidence that the GSI scalper was invented first. Absent evidence that the scalper was prior art, Sukup has not shown that GSI acted inequitably in not disclosing the matter to the PTO. GSI is entitled to summary judgment on Sukup's inequitable conduct affirmative defense and counterclaim with respect to the Tower Dryer Patents. The 364 and 843 Patents are valid and enforceable.

Sukup also infringed on the 364 and 843 Patents with its original sweep design. Morrison opined to that fact, and Sukup does not present any contradictory evidence. GSI is entitled to summary judgment on a finding of infringement with respect to Sukup's first sweep unloading device design originally installed in the Rosenwinkel Farm.[2]

---

[2]Sukup has asserted certain additional affirmative defenses that have not been resolved. <u>Defendant Sukup Manufacturing Co.'s First Amended Answer, Affirmative Defenses and Counterclaims and Demand for Jury Trial in Response to Plaintiff's Third Amended Complaint (d/e 161)</u>, at 8. Sukup's ultimate liability to GSI for any infringement claim is still subject to resolution of these remaining defenses.

Sukup argues that the matter is moot because Sukup stopped infringing after the suit was filed. This Court has determined that GSI cannot recover damages for infringement of the Tower Dryer Patents that occurred before the date of this suit. Sukup argues that it stopped infringing as soon as the suit was filed. Sukup removed the infringing sweeping device from the Rosenwinkel Farm dryer and has never sold the device again. As a result, Sukup argues that the matter is moot. However, GSI is still entitled to pursue injunctive relief, even though Sukup has stopped infringing. W.L. Gore & Associates, Inc. v. Garlock, Inc., 842 F.2d 1275, 1281-82 (Fed.Cir. 1988). Sukup must present evidence that makes it absolutely clear that the infringement could not reasonably be expected to recur before the matter is rendered moot. Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000); W.L. Gore, 842 F.2d at 1281-82. Sukup has failed to meet this burden. The matter is not moot. GSI is entitled to partial summary judgment that the 2004 Rosenwinkel Farm sweep unloader installation infringed on the 364 and 843 Patents.

Sukup, however, is entitled to summary judgment that its subsequent designs for its sweep unloaders do not infringe on the 364 and 843 Patents. GSI has the burden of proof on the issue of infringement. Intervet America,

Inc. v. Kee-Vet Laboratories, Inc., 887 F.2d 1050, 1055 (Fed.Cir. 1989). GSI has presented no evidence that the subsequent designs infringe on the 364 and 843 Patents. Morrison only opined that the first design infringed on these patents. Motion 438, Exhibit 18, Report of David Morrison, at 13-62. GSI presents no other evidence on this issue.

GSI argues that Sukup must present the actual devices to the Court to establish non-infringement. Sukup does not have to prove non-infringement. Sukup must only point to the absence of factual support for an essential element in GSI's infringement claim. Celotex Corp., 477 U.S. at 322-24. Sukup has met this burden. Sukup Unsealed Exhibits, Exhibit 48, Declaration of Charles Sukup, at ¶¶ 4-60. Thereafter, GSI has the obligation to show that issues of fact remain because GSI has the burden to prove infringement at trial. Id., at 322. GSI has failed to meet its burden. Sukup is entitled to partial summary judgment.

In sum: (1) the 276 and 367 Patents are invalid; (2) the 364 and 843 Patents are valid; (3) GSI is entitled to partial summary judgment that Sukup's initial sweep unloader installed at the Rosenwinkel Farm infringed on the 364 and 843 Patents; (4) GSI is not entitled to any compensatory damages for that infringement because it occurred prior to the

commencement of this suit; and (5) Sukup is entitled to partial summary judgment that its subsequent designs for its sweep unloader do not infringe on the 364 and 843 Patents.

THEREFORE, Plaintiff GSI Group, Inc.'s Motion for Partial Summary Judgment that All of GSI's Tower Dryer Patents-In-Suit are Valid (d/e 407) is ALLOWED in part, WITHDRAWN in part, and DENIED in part; GSI's Motion for Partial Summary Judgment Against Defendant's Inequitable Conduct Affirmative Defense and Counterclaim, and for a Declaration of Enforceability, as to All GSI's Tower Dryer Patents-In-Suit (d/e 424) is ALLOWED in part, and DENIED as moot in part; GSI's Motion for Partial Summary Judgment of Infringement of GSI's Tower Dryer Patents by the Sukup Tower Dryer Installed at the Rosenwinkel Farm (d/e 438) is ALLOWED; Defendant Sukup Manufacturing Company's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,076,276 (d/e 447) is ALLOWED; Defendant Sukup's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,073,367 (d/e 448) is ALLOWED; Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,076,276 (d/e 443) is DENIED as moot; Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patent No.

6,073,367 (d/e 444) is DENIED as moot; and Defendant Sukup's Motion for Summary Judgment of Non-Infringement of U.S. Patents Nos. 6,073,364 and 6,233,843 (d/e 445) is ALLOWED in part and DENIED in part.

IT IS THEREFORE SO ORDERED.

ENTER:   September 25, 2008

      FOR THE COURT:

                                              s/ Jeanne E. Scott
                                             JEANNE E. SCOTT
                                       UNITED STATES DISTRICT JUDGE