IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Sukup Manufacturing Company's (Sukup) Motion for Summary Judgment as to Lack of Willfulness (d/e 446).  Plaintiff GSI Group, Inc. (GSI), alleges that Sukup willfully infringed on the following patents held by GSI: U.S. Patent 5,135,271 (271 Patent) covering a latching device and improved pin design related to grain bin doors; U.S. Patent 5,400,525 (525 Patent) covering a flame cone in a grain bin heater; U.S. Patent No. 6,076,276 (276 Patent), U.S. Patent No. 6,073,367 (367 Patent), U.S. Patent No. 6,073,364 (364 Patent), and U.S. Patent No. 6,233,843 (843 Patent) (collectively the Tower Dryer Patents) covering various aspects of a sweep grain unloading

1

device (Sweep Unloader) used in GSI's tower grain dryers. The Court has previously determined that: (1) the 364 and 843 Patents are valid; (2) the 276 and 367 Patents are invalid; and (3) issues of fact exist regarding whether the 525 Patent and the 271 Patent are valid. Opinion entered on September 11, 2008 (d/e 667) (Opinion 667), at 41-42; Opinion entered September 25, 2008 (d/e 678) (Opinion 678), at 19-20; Opinion entered October 8, 2008, (d/e 682) (Opinion 682), at 12. The Court also has determined that Sukup previously infringed on the 364 and 843 Patents, but is not currently infringing on them. Opinion 678, at 17-18. The Court has also determined that if the 525 Patent is valid, Sukup previously infringed on that Patent, but it is not currently infringing on that Patent. Opinion 682, at 20. The Court has yet to address other affirmative defenses raised by Sukup that may affect its liability. Sukup now asks for partial summary judgment that even if it is liable for infringement, GSI cannot establish that the infringement was willful. After careful review, the Court concludes that issues of fact exist regarding Sukup's alleged willfulness. The Motion is therefore denied.

## STATEMENT OF FACTS

The U.S. Patent Office (PTO) issued the 271 Patent on August 4,

1992.  The PTO issued the 525 Patent on March 28, 1995.  The PTO issued the Tower Dryer Patents in June 2000, except for the 843 Patent.  The 843 Patent was issued on May 22, 2001.  GSI gave statutory notice of the 271 Patent in September 2002 by marking its bin doors with the patent number.  <u>Defendant Sukup Manufacturing Co.'s Motion Under Federal Rule of Civil Procedure Rule 56 for Partial Summary Judgment to Preclude Damages Before Notice of Infringement Pursuant to 35 U.S.C. § 287 (d/e 79)</u>, at ¶ 4; <u>Text Order entered July 19, 2006</u>.  GSI did not mark its grain bin heater or tower dryer with the patent numbers of the applicable patents-in-suit as of the date that it brought this action on January 19, 2005.

GSI mentioned at least some of its patents in its marketing material.  In 2003, GSI published a brochure for its tower dryers that were marketed under the brand name Zimmerman.  <u>GSI's Opposition to Sukup's Motion for Partial Summary as to Lack of Willfulness (d/e 446) (d/e 506) (GSI Opposition)</u>, Exhibit 7, <u>GSI Tower Dryer Brochure (GSI Brochure)</u>.  The GSI Tower Dryer Brochure stated the following about the Sweep Unloader referred to as the "Accu-trol Metering System" :

> Proven (Patented) Accu-trol Metering System, included in most models, provides positive grain flow from columns with self cleaning action, free of restriction resulting from transient

3

moisture, foreign objects, or varying product conditions. Id., at 2.[1] Sukup's Director of Marketing Randy Coffee had a copy of the GSI Brochure when he prepared the marketing materials for Sukup's tower dryer; he copied the specifications in the GSI Brochure when he prepared those marketing materials. GSI Opposition, Exhibit 5, Deposition of Randy Eugene Coffee, at 61, 64. GSI has also advertised that its grain bin door latching device was patented. Opposition to Defendant Sukup's Motion for Summary Judgment Barring Plaintiff from Recovery of Lost Profits and Alternatively Under Entire Market-Value Rule, d/e 451 (d/e 546), Exhibit 4, Declaration of Ronald Bestwick in Opposition to Sukup's Motion for Summary Judgment (d/e 451) Regarding Damages for Infringement of U.S. Patent 5,135,271, attached GSI Grain Bin Brochure, at 6; Plaintiff's Pre-Markman Hearing Brief Regarding Construction of U.S. Patents 6,073,364; 6,073,367; 6,076,276; 6,233,843; 5,135,271 and 5,400,525 (d/e 78), Exhibit 4, GSI Grain Bin Brochure Excerpt, at 6. The GSI grain bin advertising materials presented to the Court were published after this suit

---

[1] Sukup President Charles Sukup received a copy of the April/May 1997 issue of the trade publication FEED & GRAIN in which the Sweep Unloader was advertised under the "Accu-trol Metering System" trade name. Sukup Unsealed Exhibits (d/e 461) (Sukup Unsealed Exhibits), Exhibit 48, Declaration of Charles Sukup, ¶ 37, and Exhibit 65, ffi advertisement from the April/May 1997 FEED & GRAIN.

4

was filed.

Sukup first started marketing its accused grain bin heater in 1999. Opinion 682, at 7. In developing its heater, Sukup personnel examined the GSI grain bin heater and copied the GSI flame cone design covered by the 525 Patent. GSI Opposition, Exhibit 12, Deposition of Randall Poock, at 17-20.

Sukup started marketing its grain bins in 2001. The original design of the pin used in the Sukup door latching mechanism was largely identical to the preferred embodiment of the pin design set forth in the 271 Patent and to the pin design actually used by GSI. Opinion 667, at 15, 50. The Sukup handle and latching mechanism was not identical to the GSI handle. GSI used one long handle bar, but Sukup used two handles. GSI's design used a cam that rotated against a pin on the door frame, but the Sukup design used the end of the handle that rotated against a bracket on the door frame. See Opinion 667, at 4-8, 16-18.

Sukup first started marketing a tower dryer in 2004. In November 2003, Sukup personnel inspected and took photographs of a GSI tower dryer in Hopkinsville, Kentucky. GSI Opposition, Exhibit 9, Deposition of Kevin Janssen, at 38-40; Exhibit 10, Deposition of George Griffin, at 27;

Exhibit 11, Deposition of John Hanig, at 50. The Court previously determined that the original design of the Sukup sweep unloading device infringed on the 364 and 843 Patents. Opinion 678, at 17. Charles Sukup stated in his deposition that he first learned of GSI's Tower Dryer Patents in October 2004. GSI Opposition, Exhibit 1, Deposition of Charles Sukup, at 73-74. He stated that he was not aware of the other GSI patents-in-suit until after this case was filed. Id., at 75.

GSI filed this case on January 19, 2005. The initial Complaint alleged infringement of the Tower Dryer Patents and the 271 Patent. Complaint (d/e 1), Counts I and II. On May 10, 2005, GSI filed an Amended Complaint alleging infringement of the 525 Patent. Amended Complaint (d/e 5), Count III. GSI, however, did not seek a preliminary injunction to stop the alleged ongoing infringement.

After the case was filed, Sukup secured some opinions from its counsel Timothy Zarley. Zarley rendered some oral opinions beginning in February 2005. GSI Opposition, Exhibit 2, Deposition of Timothy Zarley, at 13. On April 7, 2005, attorney Zarley issued a written opinion letter regarding the Tower Dryer Patents. GSI Opposition, Exhibit 4, Opinion Letter, dated April 7, 2005. Zarley opined that Sukup's newer, post-filing version of the

sweep unloading device did not infringe on the Tower Dryer Patents. Id. Zarley did not address whether the original sweep unloading device infringed on these patents. On April 20, 2005, attorney Zarley issued an opinion letter regarding Claim 14 of the 271 Patent. GSI Opposition, Exhibit 3, Opinion Letter dated April 20, 2005. Zarley opined that Sukup's pin in its grain bin door latching system did not infringe on Claim 14 of the 271 Patent. Zarley did not provide a written opinion regarding the other claims in the 271 Patent. Zarely did not issue a written opinion regarding the flame cone covered by the 525 Patent.

Also, after this case was filed, Sukup modified its accused devices. Sukup replaced its flame cone in its grain bin heater with a "wedding cake" diverter insert. Opinion 682, at 7. Sukup redesigned the sweep unloading device in its tower dryer several times. Opinion 678, at 7-8. Sukup also redesigned the pin used in its grain bin door latching mechanism several times. Opinion 667, at 15-16.

## ANALYSIS

At summary judgment, Sukup must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the

7

evidence presented in the light most favorable to GSI. Any doubt as to the existence of a genuine issue for trial must be resolved against Sukup. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Sukup has met its burden, GSI must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Patent Act authorizes enhanced damages for willful infringement up to three times the amount of actual damages. 35 U.S.C. § 284; In re Seagate Technology, LLC, 497 F.3d 1360, 1368 (Fed.Cir. 2007). To receive enhanced damages, GSI must show by clear and convincing evidence that: (1) Sukup acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and (2) the objectively high likelihood of infringement was either known by Sukup or so obvious that it should have been known by Sukup. In re Seagate, 497 F.3d at 1371. An alleged infringer's decision not to secure an opinion is relevant to show willfulness, but an alleged infringer is not required to secure an attorney opinion letter before marketing a device to avoid a claim of willfulness. Id., at 1369, 1371. The remedy of enhanced damages is generally available only

for conduct that occurred before the filing of the suit because a patent holder can secure a preliminary injunction to stop post-filing infringement. "A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." Id., at 1374.

When viewed in the light most favorable to GSI, the evidence supports a finding that Sukup willfully infringed on the Tower Dryer Patents before the filing of this action. The GSI Brochure stated that the Sweep Unloader was patented. Sukup Director of Marketing Randy Coffee had a copy of this brochure when he started to prepare the marketing materials for Sukup. Sukup personnel inspected and photographed the GSI tower dryer as part of the process of developing the Sukup tower dryer. Sukup's original sweep unloading device infringed on the 364 and 843 Patents. When read favorably to GSI, Sukup's actions of inspecting the GSI tower dryer and then building a competing device that infringed on the GSI patents shows an objectively high likelihood that Sukup's actions constituted infringement. The fact that Sukup representatives had in their possession the GSI Brochure that stated that the Sweep Unloader was patented, but Sukup went ahead and copied the Sweep Unloader, could support the conclusion

9

that the objectively high likelihood of infringement was either known by Sukup or was so obvious that it should have been known by Sukup. Charles Sukup denies any knowledge of the Tower Dryer Patents until the fall of 2004, but that evidence only creates an issue of fact.

The pre-filing evidence with respect to the 525 and 271 Patents is weaker. Sukup copied the GSI flame cone design covered by the 525 Patent. Copying a patented device could demonstrate an objectively high likelihood that the action would constitute infringement. GSI, however, has little or no evidence that the risk of infringement was either known by Sukup or was so obvious that it should have been known by Sukup. GSI presents no evidence that Sukup knew that the flame cone in its heater was patented. GSI had not marked the device with the patent number. Unlike the other patents-in-suit, GSI presents no evidence that it advertised that the heater used a patented flame cone.

With respect to the 271 Patent, the pre-filing evidence shows that Sukup designed a door latching mechanism which may infringe on Claims 1, 9, and 14 of the 271 Patent. Opinion 667, at 47-50. The pre-filing evidence also shows that Sukup marketed a pin for its latching mechanism that was almost identical to the pin used by GSI in its door latching

mechanism.  Id., at 15 and Appendix H.  The evidence surrounding the flame cone and the Sweep Unloader also shows that Sukup copied a GSI design on two other occasions.  The similarities between the pins used by Sukup and Sukup's history of copying could support the inference that Sukup copied GSI's pin design when it developed its grain bin door latching mechanism, at least for purposes of summary judgment.  If so, copying a patented device shows an objectively high likelihood that such an act would constitute infringement.

GSI must also present evidence that Sukup knew or should have known of the objectively high likelihood of the consequences of its action. Pre-filing, GSI has little evidence.  GSI marked its grain bin door with the 271 Patent number in September 2002.  This provides some evidence that Sukup at some point may have known that the grain bin door was patented. Sukup, however, started selling its grain bins with the accused pin in 2001, before GSI marked its door with the patent number.  GSI's current marketing materials show that the grain bin door latching mechanism is patented, but GSI does not present evidence showing when its advertising brochures started informing the public that the door latching mechanism was patented.

11

Post-filing, Sukup secured an opinion letter that Claim 14 of the 271 Patent was not valid. Claim 14 relates to the improved pin design for the grain bin door latching mechanism. Opinion 667, at 19-20. Sukup also redesigned its grain bin door pin twice. The modified pin designs do not literally infringe on Claim 14 of the 271 Patent, but may infringe under the doctrine of equivalents. Opinion 667, at 49-50.

Sukup, however, did not secure an opinion of counsel regarding whether its mechanism for latching and unlatching grain bin doors infringed on the 271 Patent. GSI alleged that Sukup infringed on all of the claims in the 271 Patent. Sukup secured an opinion regarding the validity of Claim 14 of the 271 Patent, but did not secure any opinions regarding the rest of the claims. Sukup continued to manufacture and market the door latching mechanism without any expert or legal evaluation of its possible infringement. Sukup secured an expert report, but that was in the fall of 2006, over eighteen months after the suit was filed. See Minute Entry entered August 2, 2006. When the evidence is viewed in the light most favorably to GSI, Sukup knew that there was a likelihood that its door latching mechanism infringed on the 271 Patent, but did nothing to secure an evaluation of that risk or to modify the mechanism to address the risk.

Sukup just kept selling the mechanism regardless of the possible infringement.

When viewed as a whole, and in the light most favorable to GSI, the pre-filing and post-filing evidence shows that issues of fact exist regarding whether Sukup willfully infringed on the Tower Dryer Patents and the 271 Patent. With respect to the Tower Dryer Patents, Sukup had in its possession GSI advertising materials that stated that the Sweep Unloader was patented, yet Sukup copied the GSI design. From this, one could infer actual knowledge of GSI's Tower Dryer Patents and a conscious decision to go ahead and infringe on these patents.

The evidence with respect to the 271 Patent is more circumstantial. Sukup arguably has a history of copying GSI designs. Sukup copied the flame cone design in the heater; it copied the Sweep Unloader; and it appears to have copied the design for the pin in GSI's grain bin door. Sukup arguably knew that the Sweep Unloader was patented and copied it anyway. The GSI grain bin door was marked with the patent number in 2002, but Sukup kept marketing its accused door latching mechanism and pin. GSI's marketing material at some point advertised the fact that the grain bin door latching mechanism was patented, but Sukup kept marketing

13

its accused door. After GSI filed suit, Sukup decided to continue marketing its accused grain bin door latching mechanism for over eighteen months without securing any advice of counsel or expert advice regarding whether the mechanism infringed on the 271 Patent.

When viewed favorably to GSI, this circumstantial evidence shows a pattern of copying competing devices without regard for any possible patent infringement. See Kaufman Co., Inc. v. Lantech, Inc., 807 F.2d 970, 979 (Fed.Cir. 1986) (president of willfully infringing company would copy any machine a customer wanted regardless of whether a patent was issued). Even after being sued, Sukup did not secure advice to evaluate the claim; it just continued to market the accused device. Taken as a whole, this evidence, when read favorably to GSI, could support the conclusion that Sukup willfully infringed on the 271 Patent, both before and after GSI filed suit.

Sukup argues that its actions before the filing of the lawsuit are irrelevant with respect to the Tower Dryer Patents and the 525 Patent because the Court determined that compensatory damages were not available. The Court agrees that GSI cannot recover enhanced damages for Sukup's pre-filing infringement of the Tower Dryer Patents and the 525

Patent. Section 284 of the Patent Act states that the Court can award up to three times the actual damages in the appropriate circumstances. 35 U.S.C. § 284. GSI is not entitled to any compensatory damages for any pre-filing infringement of the Tower Dryer Patents and the 525 Patent because it did not provide notice of the patents, either by marking the devices with the patent numbers, or by some other means. Text Order entered July 19, 2006; 35 U.S.C. § 287. Thus, the available compensatory damages for Sukup's alleged pre-filing infringement of these patents is zero, and three times zero is still zero. GSI, therefore, cannot recover enhanced damages for the pre-filing infringement of these patents.

Sukup's pre-filing conduct with respect to these patents, however, is still relevant. Willfulness is an issue of intent. See In re Seagate, 497 F.3d at 1370-71. As explained above, Sukup's pre-filing conduct with respect to these patents may tend to show a pattern of recklessness that could support a finding of willful infringement of the 271 Patent. GSI may not recover any damages directly for the pre-filing infringement of the other patents-in-suit, but it may use the evidence to try to prove that Sukup recklessly and willfully copied patented devices.

Sukup also argues that its post-filing conduct is irrelevant because

15

enhanced damages are not available for post-filing conduct. The Federal Circuit has instructed this Court not to award enhanced damages for post-filing infringement; GSI's remedy for any post-filing willful infringement was a preliminary injunction. Id., at 1374. The potential enhanced damages in this case, therefore, are limited to three times the compensatory damages for Sukup's alleged pre-filing infringement of the 271 Patent.

Sukup's post-filing conduct, however, is still relevant to show intent. Sukup's decision to market its door latching mechanism for eighteen months without any expert or legal advice regarding possible infringement of the 271 Patent could be interpreted as willful, and so, could support the inference that Sukup acted willfully pre-filing as well.

The Court notes that Sukup's other post-filing conduct would also be relevant, and some of that behavior may tend to show a lack of willfulness. After the suit was filed, Sukup modified its grain bin heater and its sweep unloading device. The current versions do not infringe on any of GSI's patents-in-suit. Sukup twice redesigned its pin used in its grain bin door latching mechanism. The redesigned pin does not literally infringe on the 271 Patent, but may still infringe under the doctrine of equivalents. Opinion 667, at 50. These actions may show that Sukup had no intent to

infringe.  In the alternative, these actions may show that once Sukup got caught copying patented devices, it tried to cover its tracks.  Such interpretive issues are to be decided after the record has been fully developed at trial.  At this stage, the Court must view the evidence in the light most favorable to GSI.  When viewed in that light, Sukup's willfulness is an issue of fact.

GSI argues that enhanced damages should not be limited to pre-filing infringement.  GSI argues that the Federal Circuit's comments in Seagate about pre-filing and post-filing damages were dicta and were limited to situations in which the enhanced damage claim was based solely on post-filing conduct.  The Court agrees that the Federal Circuit's statements in Seagate about pre-filing and post-filing damages were dicta.[2]  The statements in the Seagate opinion, however, are quite clear.  The Federal Circuit stated that a patent holder, such as GSI, has an adequate remedy for post-filing willful infringement through the pursuit of preliminary injunctive relief.  The Federal Circuit further stated: "A patentee [such as GSI] who does not attempt to stop an accused infringer's activities in this manner

---

[2] The issue directly before the Federal Circuit was the scope of the waiver of attorney client privilege caused by the defendant's assertion of the advice of counsel defense.  In re Seagate, 497 F.3d at 1374.

17

should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." <u>Id.</u>, at 1374.  This Court must follow the Federal Circuit.  GSI is not entitled to enhanced damages for any post-filing willful infringement; GSI could have stopped such infringement through preliminary injunctive relief.  As explained above, the potential enhanced damages are limited to three times the compensatory damages for Sukup's alleged pre-filing infringement of the 271 Patent.

THEREFORE, Defendant Sukup Manufacturing Company's Motion for Summary Judgment as to Lack of Willfulness (d/e 446) is DENIED. IT IS THEREFORE SO ORDERED.

ENTER:   October 9, 2008

       FOR THE COURT:

                              s/ Jeanne E. Scott
                              JEANNE E. SCOTT
                     UNITED STATES DISTRICT JUDGE