E-FILED
Wednesday, 15 October, 2008  10:28:29 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the following Motions for Partial Summary Judgment:

1.   Plaintiff GSI Group, Inc.'s (GSI) Motion for Partial Summary Judgment Against Defendant's Fourth Affirmative Defense of Patent Misuse (d/e 417) (Motion 417);

2.   Plaintiff GSI's Motion for Partial Summary Judgment Against Defendant's Second Counterclaim of Tortious Interference with a Business Relationship (d/e 428) (Motion 428); and

3.   Plaintiff GSI's Motion for Partial Summary Judgment Against Defendant's Fourth Counterclaim for Alleged Violation of the Lanham

Act (d/e 429) (Motion 429).

GSI has alleged that Defendant Sukup Manufacturing Co. (Sukup) infringed on the following patents held by GSI: U.S. Patent 5,135,271 (271 Patent) covering a latching device with an improved pin design for grain bin doors, U.S. Patent 5,400,525 (525 Patent) covering a flame cone in a grain bin heater, U.S. Patent No. 6,076,276 (276 Patent), U.S. Patent No. 6,073,367 (367 Patent), U.S. Patent No. 6,073,364 (364 Patent), and U.S. Patent No. 6,233,843 (843 Patent) (collectively the Tower Dryer Patents) covering various aspects of a sweep grain unloading device (Sweep Unloader) used in GSI's tower grain dryers. Sukup's Fourth Affirmative Defense alleges patent misuse; Sukup's Second Counterclaim alleges tortious interference of business relationships; and, Sukup's Fourth Counterclaim alleges unfair competition in violation of the Lanham Act. 15 U.S.C. § 1051 et seq. Defendant Sukup Manufacturing Co.'s First Amended Answer, Affirmative Defenses and Counterclaims and Demand for Jury Trial in Response to Plaintiff's Third Amended Complaint (d/e 161). This Affirmative Defense and these two Counterclaims all relate to certain communications that GSI made to Sukup's distributors and customers during the pendency of this action.  GSI asserted in these communications

that Sukup was infringing on the Tower Dryer Patents.

GSI seeks partial summary judgment on Sukup's patent misuse defense and these two Counterclaims.  For the reasons set forth below, GSI is entitled to summary judgment on the patent misuse defense, but not on the tortious interference and Lanham Act counterclaims.   Sukup has presented sufficient evidence to demonstrate that issues of fact exist regarding whether GSI acted in bad faith in making the disputed communications, but Sukup has not presented admissible evidence necessary to create an issue of fact regarding its affirmative defense of patent misuse.  Therefore, Motion 417 is ALLOWED and Motion 428 and Motion 429 are DENIED.

## STATEMENT OF FACTS

The Court previously described tower grain dryers and various off-loading devices, including the Sweep Unloader.  Opinion entered July 27, 2007 (d/e 311) (Opinion 311), at 2-3.  The Court also discussed the development of the Sweep Unloader and the Tower Dryer Patents by a company known as ffi, Inc. (ffi).  Id., at 5-6.  In 2001, GSI acquired ffi, and with it, the Tower Dryer Patents.  The Court set forth the facts concerning ffi's sale of a tower dryer to Archer Daniels Midland (ADM) in March 1996

at State Line, Indiana, and the subsequent installation of a sweep unloading device into that dryer later in 1996 (State Line Installation).  Id., at 3-6. The Court also previously discussed the history of ffi's applications for the Tower Dryer Patents and the issuance of those patents.  Opinion entered September 25, 2008 (d/e 678) (Opinion 678), at 5-8.  Ffi filed a provisional application for these patents on July 30, 1997 (Provisional Filing), and subsequently filed four separate patent applications on July 29, 1998, that ultimately resulted in the issuance of the four Tower Dryer Patents.  Id.

The 276 Patent covered the basic structure of the Sweep Unloader. The Sweep Unloader was at the bottom of a tower dryer used to dry grain for storage.  See Opinion 311, at 2-3.  The dried grain was unloaded from the dryer as it reached the bottom of the dryer.  The Sweep Unloader used curved wipers to sweep the floor of the dryer to force the dried grain into a hopper in the center of the floor.  A support framework, located above the wipers, held the wipers in place.  The support framework was attached to a motor that spun the support framework and the attached wipers around a hub in the center of the dryer.  Attached as Appendix A is a cut-away drawing of the bottom of a tower dryer with the Sweep Unloader.

The GSI Sweep Unloader had four curved blades extending from a

hub in the center of the dryer.  The support framework was a regular octagon with the hub at its center.  The support framework was made up of support members that extended radially as spokes from the hub to each vertex of the octagon.  Cross members were connected to the ends of the spokes to form the octagon.  Additional cross members were connected between the spokes at a point approximately one-third of the distance from the hub to the end of the spokes.  Another set of cross members connected between the spokes approximately two-thirds of the distance from the hub to the ends of the spokes.  The effect was three concentric octagons.  Every other spoke (for a total of four) was connected to the end of a wiper.  Each of the other four spokes was connected to the middle of a wiper.  The various interior cross members were also connected to the wipers at the points where the cross members passed over the wipers.  Attached as Appendix B is a view of the wipers and octagonal support framework from above.

Claim 1 of the 276 Patent covered:

1.    A floor sweep assembly for a grain dryer, comprising:

a framework which is rotatable around a central axis, wherein said framework includes (i) a first primary support member which extends radially outwardly relative to said

central axis, (ii) a second primary support member which extends radially outwardly relative to said central axis, and (iii) a first ancillary support member which is spaced apart from said central axis and extends between said first primary support member and said second primary support member; and

a first wiper positioned relative to said framework such that, when said floor sweep assembly is viewed in a plan view, said framework and said first wiper define (i) a first primary intersection of said first wiper and said first primary support member, and (ii) a first ancillary intersection of said first wiper and said first ancillary support member.

Sukup Unsealed Exhibits (d/e 461), Exhibit 26, 276 Patent, at 17, Column

9. Claims 2 through 8 cross referenced the structure covered by Claim 1.

Claim 9 of the 276 Patent covered:

9.   A floor sweep assembly for a grain dryer, comprising:

a framework which is rotatable around a central axis, wherein said framework includes (i) a first primary support member which extends radially outwardly relative to said central axis, and (ii) a second primary support member which extends radially outwardly relative to said central axis; and

a first wiper positioned relative to said framework such that, when said floor sweep assembly is viewed in a plan view, said framework and said first wiper define (i) a first primary intersection of said first wiper and said first primary support member, and (ii) a second primary intersection of said first wiper and said second primary support member.

Id., at 17, Column 9-10. Claims 10 through 16 cross referenced the structure covered by Claim 9. Claim 15 covered:

> 15.    The floor sweep assembly of Claim 9, further comprising:
>
>> a second wiper positioned relative to said framework such that, when said floor sweep assembly is viewed in said plan view, said framework and said second wiper define a third primary intersection of said second wiper and said second primary support member.

Id., at 17-18, Columns 10-11.

The main distinction between the structure covered by Claim 1 (and the related claims cross-referencing Claim 1), and the structure covered by Claim 9 (and the related claims cross-referencing Claim 9, including Claim 15), was the fact that the support framework in Claim 9 did not include any cross members between the spokes radiating from the central hub.

The 367 Patent covered essentially the same invention as the 276 Patent; the only difference was that the 367 Patent added spacers between the wipers and the support framework. The spacers raised the support framework above the wipers to create a space between the wipers and the support framework. The space kept debris from building up in the support framework. See Opinion 678, at 4-5. The 364 Patent covered the ultra-high molecular weight resins that ffi used on the wipers, and the 843 Patent

covered the method of advancing grain in a tower dryer using the resin wipers claimed in the 364 Patent.  Opinion 678, at 6.

At some point, ffi failed to claim that the 276 Patent and the 367 Patent applications related back to the Provisional Filing.  As a result, the effective date of those two patents was July 29, 1998, whereas the effective date of the 364 and 843 Patents was July 30, 1997.  Id., at 6.  This proved critical because ffi started marketing the Sweep Unloader in the spring of 1996.  As a result, the 276 Patent and the 367 Patent were invalid because the covered invention was made available for commercial sale more that a year before the effective date of those patents.  35 U.S.C. § 102(b); Opinion 678, at 9.

Sukup began marketing its tower dryer with its sweep unloading device in 2004.  The original design of the sweep unloading design (Design A) infringed on the 364 and 843 Patents because of the resins Sukup used in its wipers.  Opinion 678, at 18.  The Sukup Design A used four wipers.  The support framework above the wipers consisted of four spokes that extended radially out from the center hub and attached to the end of each wiper.  Design A also had one set of cross members between each spoke.  Each cross member attached to the center of a wiper.  Attached as Appendix

8

C is a drawing of Design A.  Design A also employed spacers between the wipers and the support framework.  Sukup sold one dryer that used the Design A sweep unloading device (referred to by the parties as the Rosenwinkel Farm or Waterman, Illinois, Dryer) .  See Opinion 678, at 7.

GSI filed this action on January 19, 2005.  Shortly thereafter, GSI and Sukup began discussing the validity of GSI's various patents.  Sukup asserted that the 276 Patent was anticipated by a sweep unloading system used in a dryer marketed under the name Kan-Sun since the late 1970s.  On April 21, 2005, Charles Sukup, President of Sukup, sent a letter to GSI, stating in its first point:

> 1.  Tower Dryer – We will change design on both future units and units existing in the field to an alternative design. This alternate design is similar to that used by Kan-Sun about 30 years ago and clearly is prior art to the patents in question.  The wiper is attached to a first primary support and a second primary support.  There is no attachment to an ancillary support.  A spacer is not used between the primary support and wiper.

Sukup Supplemental Unsealed Exhibits (d/e 547), Exhibit 191, Letter from Charles Sukup to GSI dated April 21, 2005.

On April 28, 2005, David Morrison, GSI's Tower Dryer Division Manager, responded that the proposed redesign would still infringe on some

claims.  Sukup Supplemental Unsealed Exhibits, Exhibit 193, Email from David Morrison to Charles Sukup dated April 28, 2005.

Charles Sukup replied on May 2, 2005, with an email in which he sent Morrison a copy of the revised design of the sweep unloading system (Design B).  Attached hereto as Appendix D is a drawing of this design. Design B eliminated the resin on the wipers and the spacers between the support framework and the wipers.  Design B added four shorter radial spoke supports, but did not eliminate the cross supports.  Charles Sukup also stated in the May 2, 2005, email that:

> Also attached are pictures of an older Kan-Sun dryer from the 1970's or early 1980's which is clearly prior art, showing a connection at both the first and second primary supports.  We believe this should answer your concerns.

Sukup Supplemental Sealed Exhibits (d/e 543), Exhibit 194, Charles Sukup Email to David Morrison dated May 2, 2005.  Attached as Appendix E is a copy of one of the photographs Charles Sukup sent to Morrison showing a wiper and support member in a Kan-Sun dryer.  Sukup sold one dryer with the Design B sweep unloading system in May 2005, which was erected in Franklin Grove, Illinois.

On May 20, 2005, GSI filed a request for a Certificate of Correction

with the Patent and Trademark Office (PTO).  The purpose was to ask the PTO to reinstate the claim of priority of the 276 Patent to the Provisional Filing Date of July 30, 1997.  Sukup Unsealed Exhibits (d/e 461), Exhibit 31, Request for Certificate of Correction.  This matter was still pending before the PTO as of the filing of these motions.

On May 11, 2005, Morrison sent Charles Sukup an email in which he stated again that GSI believed that Design B still infringed on the 276 Patent.  Sukup Supplemental Unsealed Exhibits, Exhibit 197, Email from David Morrison to Charles Sukup dated May 11, 2005.

On May 17, 2005, David Morrison sent Charles Sukup an email in which he discussed the differences of the Kan-Sun design and the GSI design.  GSI marketed its tower dryer under the brand name Zimmerman. Morrison said:

> Dear Charles,
>
> I have attached another picture of the MC (Kan-Sun) dryer sweep in order to clarify our stance.  The MC dryer uses a curved sweep to meter grain out of their dryer.  You will notice that there are no liners attached to the sweeps, there are no spacers between the sweep and the supports, there are no tangential (ancillary) supports between the radial supports, and each sweep is fastened to only two radial supports.
>
> All of your redesigns appear to be focused on keeping your

design as close to the current Zimmerman design as possible while attempting to skirt some of the claims of our patent. Our stance has not changed. We do not want your new design to infringe on <u>any</u> of our patents. The patent reviewer was well aware of the MC (Kan-Sun) design and its prior art implications when allowing the Zimmerman patents.

We do not have a problem with Sukup using the MC (Kan-Sun) design as outlined above as long as our attorney is satisfied that you are not infringing our patents. We are also confident in our stance on the validity of our patents versus the prior art issues you have raised on the MC (Kan-Sun) design.

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 198, <u>Email from David Morrison to Sukup dated May 17, 2005 (emphasis in original)</u>.

Morrison followed up this email with a letter dated May 23, 2005.

The letter stated in part:

We have suggested several times that a design like the MC (Kan-Sun) would peacefully resolve the matter. Up to this point, everything you have suggested still contains a sweep support structure similar to our design in one way or another. I have taken your drawing, and modified it to represent a sweep system similar to the KanSun sweep system. Although Bill has informed me that even this design may still contain some infringement issues, we would be willing to compromise in order to resolve the infringement lawsuit.

<u>Sukup Supplemental Sealed Exhibits</u>, Exhibit 200, <u>Letter from David Morrison to Charles Sukup dated May 23, 2005</u>. Attached as Appendix F is the drawing attached to Morrison's letter.

On June 3, 2005, attorney Zarley sent a letter to GSI's attorney Cunningham discussing Zarley's opinion that Claims 9 and 15 of the 276 Patent were anticipated by the Kan-Sun sweep unloading device.  The letter included a drawing of the Kan-Sun design.  <u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 202, <u>Letter from Timothy Zarley to William Cunningham dated June 3, 2005</u>.  Attached as Appendix G is a copy of the drawing that accompanied this letter.

On June 23, 2005, Sukup sent a drawing of a new sweep unloading system design to GSI (Design C).  Design C also had no spacers and did not use resins in the wipers.  Design C still used four curved wipers and radial spoke supports, but eliminated all cross supports.  Rather, Design C employed one set of four support spokes that extended from the hub to the end of each wiper.  Another set of four, shorter supports extended radially from the hub to the middle of each wiper.  Attached as Appendix H is a drawing of Design C sent to Morrison.  Sukup implemented the use of the Design C sweep unloading system in its dryers on June 14, 2005.  <u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 169, <u>Declaration of Timothy Zarley dated March 17, 2008</u>, ¶ 28.

On June 27, 2005, Charles Sukup had a telephone conversation with

Morrison and Burl Shuler, GSI's Vice President of Sales and Administration in the Grain Division.  According to Charles Sukup, Morrison and Shuler told him that the Design C version of the sweep unloading system was "fine" and would not infringe on GSI's patents.  <u>Defendant Sukup Manufacturing Co.'s Opposition to GSI's Motion Under Rule 12(c) for Judgment on the Pleadings Regarding Defendant's Second and Fourth Counterclaims of Tortious Interference with a Business Relationship and Unfair Competition Under the Lanham Act (d/e 44)</u>, Exhibit A, <u>Declaration of Charles Sukup dated February 2, 2006</u>, ¶ 21; <u>Sukup's Response in Opposition to GSI's Motion for Summary Judgment Regarding Sukup's Antitrust Counterclaims (d/e 239)</u>, Exhibit 12, <u>Declaration of Charles Sukup dated March 22, 2007</u>, ¶ 6.

On June 30, 2005, Morrison sent an email to Charles Sukup that said:

Dear Charles:

In our Monday phone conversation we had indicated to you that we would try to get back to you later this week regarding the settlement of our lawsuit.  Our new owners have ask [sic] us to hold off any further discussing with you until they have had a chance to review the suit.  GSI will be in contact with you after that review takes place.

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 204, <u>Email from David</u>

Morrison to Charles Sukup dated June 30, 2005.

On July 8, 2005, GSI's attorney William Cunningham sent a letter to David Altpeter, the head of A&P Grain Systems (A&P ).  A&P was a Sukup distributor.  The letters stated, in part:

> Last year A&P Grain Systems (A&P) sold a tower dryer manufactured by Sukup Manufacturing Company. . . .
>
> We have . . . determined that it literally infringes one or more of the claims of each of GSI's U.S. Patents 6,073,364, 6,076,276, 6,073,367, and 6,233,843 (copies enclosed).
>
> It has further come to GSI's attention that A&P has sold at least one other infringing tower dryer in 2005 . . . .
>
> GSI demands that A&P immediately cease and desist from further infringement of GSI's above-noted patents.  Specifically, GSI demands that if A&P has not yet erected this second tower dryer A&P shall forthwith refrain from doing so.  GSI demands that within five (5) business days after receipt of this letter that A&P confirm in writing to me that if this second tower dryer has not yet been erected and that A&P will not do so.  Further, A&P shall affirm that it will desist from selling or erecting any other infringing tower dryers.
>
> As you may know, GSI has sued Sukup Manufacturing Company for infringement of the above-noted GSI patents.  If A&P does not give GSI its written assurances that A&P has not and will not erect this second tower dryer and/or that A&P will desist from selling other such infringing tower dryers within five (5) business days after receipt of this letter, GSI will proceed to take legal action to abate A&P's infringement of GSI's patents and to seek monetary damages for such infringement.

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 189, <u>Letter from William Cunningham to David Altpeter dated July 8, 2005</u>.  Attorney Cunningham copied attorney Zarley on this letter.  Cunningham copied Zarley on all subsequent letters that he sent to Sukup's distributors and customers.  <u>See e.g.</u>, <u>Id.</u>

On that same day, July 8, 2005, attorneys Zarley and Cunningham had a telephone conversation.  According to Zarley, Cunningham reneged on GSI's approval of Sukup's redesigns of its sweep unloading system.  <u>Zarley Declaration dated March 17, 2008</u>, ¶ 29.   Zarley also sent Cunningham a letter dated July 14, 2005, which stated, in part:

> I am writing in response to our phone conversation of July 8, 2005 . . . .
>
> . . . .
>
> From the beginning Sukup has represented its belief that it does not infringe GSI's patents and still has gone to great time, effort, and expense to redesign its devices to satisfy GSI for the purpose of settlement. . . .  Sukup contends that the validity of GSI's patents are at risk based on the KanSun device that clearly anticipates many of GSI's claims . . . .

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 206, <u>Letter from Timothy Zarley to William Cunningham dated July 14, 2005</u>.  By July 14, 2005, Sukup had also informed GSI that Sukup was using Design C for the sweep

16

unloading system in its tower grain dryers.  Sukup Supplemental Unsealed

Exhibits, Exhibit 169, Zarley Declaration dated March 17, 2008, ¶ 28.

On July 19, 2005, GSI's attorney Cunningham sent a letter to Shultz

Inter-State Ag (Shultz), another Sukup distributor.  The letter stated, in

part:

> It has come to GSI's attention that Shultz Inter-State Ag (Shultz) has recently sold a tower dryer manufactured by Sukup Manufacturing Company (Sukup).  We understand that this dryer is to be erected in Mt. Carroll, Illinois.

> Please be advised that GSI has sued Sukup for infringement of GSI's U.S. Patents 6,073,364, 6,076,276, 6,073,367, and 6,233,843 (copies enclosed) in regard to the manufacture, sale and use of Sukup's tower dryers.  The patent infringement suit is presently pending in the U.S. District Court for the Central District of Illinois.

> Be advised that GSI believes that the Sukup tower dryer sold by your company may infringe one or more of GSI's patents.  Further be advised that your company's re-sale of this tower dryer and the commercial use of this tower dryer may constitute acts of infringement of one or more of GSI's patents.

> GSI demands that Shultz permit GSI's attorneys and a GSI consultant to inspect and photograph this Sukup tower dryer as soon as it is delivered and before it is erected so that infringement may be ascertained.  More specifically, GSI demands that, within five (5) business days after receipt of this letter, Shultz confirm in writing to me:

>> (a) That Shultz will permit inspection of this tower dryer by GSI's attorneys and consultant;

(b) If this tower dryer has not yet been erected, that Shultz will not do so until after it has been inspected by GSI and GSI has ascertained that it does not infringe GSI's patents; and

(c) That Shultz will desist from selling or erecting any other infringing Sukup tower dryers.

Sukup Supplemental Unsealed Exhibits, Exhibit 189, Letter from William Cunningham to Shultz Inter-State Ag dated July 19, 2005.

Also on July 19, 2005, Cunningham sent a letter to ADM. ADM had purchased two Sukup tower grain dryers. The letter stated, in part:

It has come to GSI's attention that ADM has recently purchased two tower dryers manufactured by Sukup Manufacturing Company (Sukup) . . . . To GSI's knowledge, these tower dryers have not yet been erected.

GSI has brought suit against Sukup for infringement of GSI's U.S. Patents 6,073,364, 6,076,276, 6,073,367, and 6,233,843 (copies enclosed) in regard to the manufacture, sale and use of Sukup's tower dryers. This patent infringement suit is presently pending in the Central District of Illinois.

GSI believes that the Sukup tower dryers sold to your company may infringe one or more of GSI's patents, and that use of these Sukup tower dryers to dry grain may infringe one or more of these patents.

GSI has long valued its relationship with ADM. The purpose of this letter is to inform ADM that its purchase and use of these Sukup tower dryers may constitute acts of infringement of GSI's patents.

18

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 189, <u>Letter from William Cunningham to Jeffrey Becker, V.P. U.S. Grain Operations & Engineering ADM Grain Division, dated July 19, 2005</u>.

On July 26, 2005, Zarley wrote a letter to Cunningham.  Zarley said, in part:

> I am writing in follow up to my letter of July 14, 2005, for which I have yet to receive a response.  I understand that GSI claims to be uncertain as to Sukup's current designs, which is surprising considering the amount of correspondence that has been exchanged and the representations that GSI has made.
>
> . . . .
>
> To avoid litigation costs and reach a peaceful business solution, Sukup submitted additional rotor designs on May 6, 2005 and June 23, 2005.  In a telephone conference held on June 27, 2005, Burl Shuler and Dave Morrison of GSI represented that the design submitted June 23rd was fine.  Sukup has proceeded in reliance of GSI's representations.
>
> Somewhere along the way settlement has been sidetracked. First, in your phone call of July 8, 2005 where you made a demand for damages, and more recently in your letters to Sukup's customers. . . .
>
> As to GSI's uncertainty, [discussion of products covered by other patents-in-suit].  Sukup is likewise proceeding, based on GSI's representations, with the rotor design outlined in its June 23, 2005 correspondence [Design C].  The one exception is the rotor for the tower dryer located near Franklin Grove, Illinois, which has a rotor as shown on Sukup's May 6, 2005 correspondence [Design B].

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 208, <u>Letter from Timothy Zarley to William Cunningham dated July 26, 2005</u>.

On July 28, 2005, attorney Cunningham responded to Zarley's July 26, 2005, letter.  Cunningham stated, in part:

> GSI has not been provided with any assurances that Sukup has, in fact, redesigned its tower dryers . . . so as to avoid infringement.  While Sukup has provided GSI with informal sketches of Sukup's proposed design changes, GSI has not received actual engineering drawings or engineering change notices where such changes have been put into production.  It would be most helpful if Sukup would provide GSI with such engineering drawings and with photos of its current tower dryer rotor . . . .  We would also request that Sukup provide photos of the rotors used in the tower dryers sold to (or by) Shultz to ADM, and that Sukup provide photos of the rotor of the tower dryer now in use at the Rosenwinkel farm in DeKalb County, Illinois.
>
> . . . .
>
> With regard to GSI's contacting Sukup's tower dryer customers, because Sukup has not provided GSI with any engineering documentation regarding the rotor design employed in the tower dryers sold to Shultz or to ADM, it behooves GSI to put these entities on notice of possible infringement. . . .

<u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 209, <u>Letter from to William Cunningham to Timothy Zarley dated July 28, 2005</u>.

On August 1, 2005, Cunningham sent additional letters to Shultz and ADM.  As with the July 19, 2005 letters, the letters were substantially

20

similar.  The body of the letter to Shultz stated:

> This is a follow-up to my letter of July 19 and is in response to Mr. Zarley's July 26th letter.  In my July 19th letter, I pointed out that my client, The GSI Group, Inc. (GSI), had reason to believe that certain tower dryers manufactured by Sukup Manufacturing Company and sold by Shultz Inter-State Ag  may infringe one or more of GSI's patents.
>
> Because Shultz Inter-State Ag has re-sold these possibly infringing dryers, your company may also be liable for infringing one or more of GSI's patents.
>
> Mr. Zarley suggested that "Sukup has redeisgned its tower dryer for the purpose of reaching settlement."  However, this case has not been settled and GSI continues to prosecute the case toward trial.

Sukup Supplemental Unsealed Exhibits, Exhibit 189, Letter from William Cunningham to Timothy Shultz dated August 1, 2005.[1]

On August 24, 2005, attorney Zarley sent a letter to Cunningham in which he attached nine photographs of a fully constructed Design C sweep unloading system.  Attached as Appendix I is a copy of the first of these photographs.  The letter also stated, in part:

> This rotor has been installed on the Waterman, Illinois

---

[1]The only substantial difference in the letter sent to ADM was that the middle paragraph did not say that ADM may be liable.  Rather the paragraph said, "Because ADM is a good and valued GSI customer, GSI wanted to advise ADM that the tower dryers that ADM recently purchased from Sukup may infringe one or more of GSI's patents."  Sukup Supplemental Unsealed Exhibits, Exhibit 189, Letter from William Cunningham to Jeffrey Becker, VP ADM dated August 1, 2005.

[Rosenwinkel Farm] location and is also the design that Sukup plans to use on all future models.  This design is based on the drawing that was submitted to and approved by GSI executives in late June.  Sukup has proceeded based on these representations.

Sukup Supplemental Unsealed Exhibits, Exhibit 210, Letter from Timothy

Zarley to William Cunningham dated August 23, 2005.

On September 7, 2005, GSI issued a Press Release.  The Press Release

stated, in part:

On January 19, 2005, The GSI Group, Inc., instituted a patent infringement lawsuit against Sukup Manufacturing Company of Sheffield, Iowa. . . .  The lawsuit is pending in the United States District Court for the Central District of Illinois.

The Federal lawsuit asserts that the defendant Sukup is making and selling three types of products containing components which infringe upon patents issued by the Federal government to The GSI Group, Inc.

Specifically, the Complaint asserts that Sukup has placed tower grain dryers into commerce that infringe claims depicted in four separate patents held by The GSI Group, Inc., in violation of Federal law.  It is asserted in the Complaint that this infringement by Sukup has been willful and deliberate.

. . . .

In the Complaint, The GSI Group, Inc. has indicated that it will aggressively prosecute the infringement lawsuit, and that it will seek money damages resulting from infringement, with amounts trebled as authorized by Federal law.  The lawsuits also seeks to permanently enjoin Sukup from infringing the patents.

Sukup Supplemental Unsealed Exhibits, Exhibit 190, GSI Press Release dated September 7, 2005.

On September 8, 2005, attorney Cunningham again sent out letters to Sukup's customers ADM, FC Coop, and Innovative Ag Services. The letter to ADM stated, in part, "Just to be clear, GSI has not agreed with Sukup that any design of Sukup's tower dryers, including the design of the dryers purchased by ADM, does not infringe GSI's patents." Sukup Supplemental Unsealed Exhibits, Exhibit 189, Letter from William Cunningham to Andrew Nilles dated September 8, 2005. After this letter was sent to ADM, Charles Sukup stated that Sukup, "hardly got any business from ADM the year after." Sukup Supplemental Sealed Exhibits, Exhibit 187, Deposition of Charles Sukup, at 26.

Attorney Cunningham's September 8, 2005, letters to FC Coop and Innovative Ag Services were substantially similar. The letter to FC Coop stated, in part:

> It has come to GSI's attention that FC Coop has recently purchased a tower dryer manufactured by Sukup Manufacturing Company (Sukup). We understand that this dryer is not being erected at your facility in Ida Grove [Iowa].
>
> Please be advised that GSI has sued Sukup for infringement of GSI's U.S. Patents 6,073,364, 6,076,276,

6,073,367, and 6,233,843 (copies enclosed) in regard to the manufacture, sale and use of Sukup's tower dryers.  This patent infringement suit is presently pending n the U.S. District Court for the Central District Court of Illinois.  These patents not only cover the construction of certain tower dryers, but they also cover certain methods of advancing grain in a grain dryer with a floor sweep that may be infringed by your company's use of the Sukup dryer to dry grain.

In recent days, GSI has learned that Sukup or Sukup's patent counsel, Mr. Zarley, has told Sukup's tower dryer customers that GSI has agreed that the design of the dryer sold to those customers does not infringe any of GSI's patents.  Just to be clear, GSI has not agreed that any design of Sukup's tower dryers does not infringe GSI's patents.

Before we can ascertain whether the Sukup dryer purchased by your company infringes or whether your use of the Sukup dryer infringes any of GSI's patents, it will be necessary for GSI's personnel inspect and photograph the dryer.

Accordingly, GSI demands that your company permit GSI's designated employee(s) or other representative(s) to inspect and photograph this Sukup tower dryer as soon as possible so that infringement may be ascertained.

GSI is prepared to inspect this tower dryer within five (5) business days after you notify me where and when the dryer may be inspected and photographed.

We await your compliance.

Supplemental Unsealed Exhibits, Exhibit 189, Letter from William Cunningham to Jim Porter, Manager, FC Coop dated September 8, 2005.

On November 2006, representatives of the Matthews Company,

which at one time manufactured the Kan-Sun dryer, were deposed.  Motion 429, Exhibit 13, Cover pages of the Depositions of Joe Scott and Robert McMahon, both dated November 21, 2006.  GSI states that these men confirmed that Kan-Sun dryer materials were published before July 30, 1996; however, GSI did not submit to the Court the excerpts from the depositions in which Scott and McMahon confirmed the publication dates. Motion 429, Statement of Undisputed Fact, ¶ 20.  The Kan-Sun materials referred to by GSI appears to be a Kan-Sun dryer marketing brochure. Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment Against Defendant's Fourth Counterclaim for Alleged Violation of the Lanham Act (d/e 429) (d/e 591), Response to Undisputed Material Facts, ¶ 114; Sukup Supplemental Unsealed Exhibits, Exhibit 171, Kan-Sun Brochure.

On December 19, 2006, GSI requested cancellation of Claims 9 and 15 of the 271 Patent.  Sukup Unsealed Exhibits, Exhibit 33, GSI Reissue Application.  On October 29, 2007, GSI filed with the PTO a statutory disclaimer of Claims 9 and 15 of the 276 Patent.  GSI's Opposition to Defendant's Motion for Reconsideration of the Opinion Granting Partial Summary Judgment (d/e 311) (d/e 346), Exhibit A, Disclaimer in Patent

Under 37 CFR 1.321(a).  GSI states that it canceled Claims 9 and 15 of the 276 Patent in light of the Kan-Sun prior art.  Motion 429, Statement of Undisputed Fact, ¶ 23.[2]

ANALYSIS

At summary judgment, GSI must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Sukup.  Any doubt as to the existence of a genuine issue for trial must be resolved against GSI. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once GSI has met its burden, Sukup must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

To prevail on its tortious interference claim, Sukup must show that: (1) Sukup had an ongoing business relationship with third parties; (2) GSI knew of this relationship; (3) GSI intentionally took some wrongful act to

---

[2]GSI states, "As a result of this newly proven prior art, GSI canceled 9 and 15 of the '276 Patent in the Reissue Request."  Motion 429, Statement of Undisputed Fact, ¶ 23.

interfere with this business relationship; and (4) damages.   See e.g.,

Sullivan's Wholesale Drug Co., Inc. v. Faryl's Pharmacy, Inc., 214

Ill.App.3d 1073, 1080, 573 N.E.2d 1370, 1374-75 (Ill.App. 5th Dist.,

1991).  The Patent Act, however, preempts such claims unless Sukup proves

the additional element that GSI acted in bad faith.   800 Adept, Inc. v.

Murex Securities, Ltd., 539 F.3d 1354, 1369 (Fed. Cir. 2008).  To establish

bad faith, Sukup must present clear and convincing evidence that GSI

actions were both objectively baseless and subjectively baseless.  Id.  GSI's

communications asserting infringement were objectively baseless if no

reasonable litigant could realistically expect success on the merits.  Id.  If

shown, Sukup must also present evidence that GSI acted subjectively in bad

faith.  Id.

Sukup's Lanham Act claim requires proof that: (1) GSI made a false

or misleading statement of fact in commercial advertising or promotion of

its Sweep Unloader; (2) the statement actually deceived or was likely to

deceive Sukup's distributors and customers; (3) the deception was material

and was likely to influence purchasing decisions; (4) GSI caused the

statement to enter interstate commerce; and (5) the statements caused

actual or probable harm to Sukup.  Zenith Electronics Corp. v. Exzec, Inc.,

27

182 F.3d 1340, 1348 (Fed.Cir. 1999).  Like the tortious interference claim, the interplay between the Lanham Act and the Patent Act requires Sukup to also show by clear and convincing evidence that GSI acted in bad faith. Id., at 1343.

GSI seeks partial summary judgment on these two Counterclaims because Sukup lacks evidence of bad faith.  Thus, for purposes of these Motions only, GSI does not dispute that Sukup has sufficient evidence on the other elements to create issues of fact.  The only issue raised by the Motions is whether Sukup has presented evidence of bad faith.

Sukup has met its burden with respect to the two Counterclaims. When read in the light most favorable to Sukup, the evidence shows that GSI acted in bad faith by issuing a Press Release and sending letters that deceptively asserted that Sukup was continuing to infringe on the Tower Dryer Patents.  According to Sukup's evidence, GSI knew that Sukup was using the Design C sweep unloading system at the time that it sent these communications.  Design C did not infringe on the 367 Patent, the 364 Patent, or the 843 Patent.  The 367 Patent only covered spacers, and Design C had no spacers.  The 364 Patent and the 843 Patent covered the use of resins on the wipers, and Design C had no resins on the wipers.

28

When read favorably to Sukup, the evidence also shows that Design C did not infringe on any valid part of the 276 Patent. Design C had no cross members. As such, it was only covered by Claim 9 of the 276 Patent and the dependent claims that cross-referenced Claim 9, including Claim 15. Sukup's evidence shows that Claims 9 and 15 were invalid because they were anticipated by the Kan-Sun dryer. GSI also disclaimed these two claims in December 2006 in light of the prior art in the Kan-Sun dryer. See Motion 429, Statement of Undisputed Fact ¶ 23. GSI's Tower Dryer Division Manager David Morrison stated in May 2005 that the Kan-Sun dryer was prior art. He discussed the Kan-Sun dryer at length in the May 17, 2005, and May 23, 2005, emails quoted above. When read favorably to Sukup, this evidence shows that GSI knew that the Kan-Sun dryer was prior art in May 2005.

Thus, when read favorably to Sukup, this evidence shows that no reasonable litigant after June 2005, with the information available to GSI, could realistically expect success on the merits on claims of ongoing infringement of the Tower Dryer Patents.[3] With this knowledge, GSI sent

---

[3]Sukup also argues that GSI knew the 276 Patent was invalid because it knew that the 276 Patent did not relate back to the Provisional Filing date. This evidence does not show that GSI knew the 276 Patent was invalid; this only shows that GSI knew the

out the letters and the Press Release quoted above.  Those communications were intended for Sukup's distributors and customers, and, when read favorably to Sukup, those communications deceptively asserted that Sukup was engaged in ongoing infringement of the Tower Dryer Patents.  Sukup, thus, has presented evidence that GSI sent out the subsequent communications in bad faith.

GSI states Sukup did not prove that the Kan-Sun dryer was prior art until November 2006, when Sukup verified the publication date of Kan-Sun materials.  Motion 429, Statement of Undisputed Fact ¶ 20.[4]  Even if true, this assertion begs the question.  The issue of GSI's alleged bad faith turns on the date when GSI knew that the Kan-Sun dryer was prior art that invalidated Claims 9 and 15 of the 276 Patent, not when Sukup could prove that the Kan-Sun dryer was prior art.  Once GSI knew that Claims 9 and 15

---

effective date of the 276 Patent was July 29, 1998, rather than July 30, 1997.  Sukup must present evidence that GSI knew that the Sweep Unloader was offered for commercial sale more than a year before the effective date to establish that GSI knew the change in the effective date invalidated the patent.  See Opinion 678, at 9.  Sukup must present evidence that, in 2005, GSI knew the date on which ffi began offering the Sweep Unloader to the public.  Sukup offers no evidence on this point.  Without such evidence, the fact that GSI knew the effective date change does not show bad faith.

[4]GSI does not supply any evidence to support this proposition.  The only materials cited are the cover pages of two depositions.  No excerpts from the depositions are included.  Motion 429, Exhibit 13; Motion 248, Exhibit 11.

were invalid, GSI could not realistically expect success on the merits of any claims of ongoing infringement, at least when the evidence is viewed favorably to Sukup.

GSI also asserts that, when GSI sent out the disputed communications, Sukup had not provided GSI with proof that it was in fact using Design C in its dryers. This is an issue of fact. Sukup states that it informed GSI by July 14, 2005, that it had implemented the use of Design C. On August 23, 2005, Sukup provided photographs of the actual, fully constructed Design C sweep unloading system. Thereafter, GSI issued the press release and sent out the letters directed at Sukup's distributors and customers. When read favorably to Sukup, GSI had notice that Sukup was using Design C. With that knowledge, Sukup has presented evidence that GSI asserted in bad faith that Sukup was continuing to infringe on the Tower Dryer Patents. Sukup has presented sufficient evidence to overcome summary judgment on its Counterclaims for tortious interference and unfair competition in violation of the Lanham Act.

GSI argues that the communications between the parties from January to June 2005, are inadmissible because those communications were part of settlement negotiations. Statements and conduct made in connection with

settlement discussions are inadmissible "when offered to prove liability for, or invalidity of . . . a claim that was disputed as to validity . . . ." Fed. R. Evid. 408.  In this case, the settlement talks concerned the validity of GSI's infringement claims.  Sukup does not present this evidence to prove or disprove those claims.  Rather, Sukup seeks to admit this evidence to prove that GSI subsequently committed other tortious acts by sending out communications in bad faith.  Rule 408 does not prohibit the admission of settlement discussions to prove subsequent wrongful conduct.  See e.g., Carney v. American University, 151 F.3d 1090, 1095 (D.C. Cir. 1998); Uforma/Shelby Business Forms, Inc. v. N.L.R.B., 111 F.3d 1284, 1293 (6th Cir. 1997).  Sukup can, thus, use the parties' settlement discussions to prove that GSI's subsequent conduct was committed in bad faith.

GSI also argues that the settlement discussions are inadmissible under Federal Rule of Evidence 403.  Rule 403 states that relevant evidence may be excluded, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . ." Fed. R. Evid. 403.  In this case, the risks of prejudice and confusion are minimal.  The only substantial risk would be that the jury would use the settlement evidence to decide GSI's Tower Dryer Patents infringement

claims. Those issues have been resolved. This Court has already decided that: (1) the 276 and 367 Patents are invalid, (2) Sukup's original sweep unloading system Design A infringed on the 364 and 843 Patents, and (3) the subsequent designs do not infringe.[5]

The settlement communications might also be relevant to prove Sukup's willfulness or to secure an injunction against future infringement. These issues, however, are matters for the Court, not the jury. The Court will not be confused, and GSI will not be prejudiced in the determination of these issues. The settlement discussions are admissible to prove the issue of bad faith in Sukup's Counterclaims for tortious interference and unfair competition under the Lanham Act.

The settlement discussions, however, are not admissible to establish Sukup's patent misuse affirmative defense. The affirmative defense of patent misuse arises from the equitable doctrine of unclean hands. The defense is available to avoid liability for GSI's claims of infringement. To show patent misuse, Sukup must establish that GSI attempted in bad faith and with an improper purpose to broaden the proper scope of its patents,

---

[5]To the extent that the settlement discussions concerned other patents, the admissibility of those portions of the communications can be addressed prior to trial through motions in limine.

and that those actions had an anticompetitive effect on the market.  C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1372 (Fed.Cir. 1998); Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1558 (Fed.Cir. 1995).   Sukup wishes to use the settlement discussions to demonstrate that GSI acted in bad faith to expand the scope of its patents to keep Sukup out of the market.  The settlement discussions regarding GSI's patent infringement claims, however, cannot be used to address the issue of liability for those same infringement claims.  Fed. R. Evid. 408.   The evidence, therefore, is inadmissible for this purpose. Without this evidence, Sukup cannot establish its claim of bad faith and improper purpose necessary for the patent misuse defense.[6]

THEREFORE, Plaintiff GSI Group, Inc.'s Motion for Partial Summary Judgment Against Defendant's Fourth Affirmative Defense of Patent Misuse (d/e 417) is ALLOWED.  The Court enters partial summary judgment in

---

[6]Sukup also argues that GSI committed patent misuse per se.  Patent misuse per se involves using a patent to secure enforceable rights, by contract or otherwise, that go beyond the scope of the patent, such as securing an agreement: to pay royalties after a patent expires, to buy an unrelated product, or not to produce a competing product.  See County Materials Corp. v. Allan Block Corp., 502 F.3d 730, 735 (7th Cir. 2007); Trustees of Columbia University in City of New York v. Roche Diagnostics GmbH, 272 F.Supp.2d 90, 113 (D.Mass. 2002). GSI's disputed communications did not involve any attempt to expand GSI's rights under its patents by contract or otherwise.  There was no evidence of patent misuse per se.

favor of Plaintiff GSI Group, Inc., and against Defendant Sukup Manufacturing Co. on Defendant's Fourth Affirmative Defense of Patent Misuse.  Plaintiff GSI's Motion for Partial Summary Judgment Against Defendant's Second Counterclaim of Tortious Interference with a Business Relationship (d/e 428) and Plaintiff GSI's Motion for Partial Summary Judgment Against Defendant's Fourth Counterclaim for Alleged Violation of the Lanham Act (d/e 429) are DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:  October 15, 2008

      FOR THE COURT:

                        s/  Jeanne E. Scott
                       JEANNE E. SCOTT
           UNITED STATES DISTRICT JUDGE

APPENDIX A



<u>Sukup Unsealed Exhibits (d/e 461)</u>, Exhibit 26, <u>276 Patent</u>, at 5, fig. 3.

APPENDIX B



<u>Sukup Unsealed Exhibits (d/e 461)</u>, Exhibit 26, <u>276 Patent</u>, at 6, fig. 4A.

# APPENDIX C



Sukup Sealed Exhibits (d/e 460), Exhibit 56, Drawing of Design A.

APPENDIX D



<u>Sukup Supplemental Sealed Exhibits (d/e 543)</u>, Exhibit 194, <u>Charles Sukup letter to David Morrison dated May 2, 2005, Drawing of Design B</u>.

APPENDIX E



<u>Sukup Supplemental Sealed Exhibits (d/e 543)</u>, Exhibit 194, <u>Charles Sukup letter to David Morrison dated May 2, 2005, Photograph of Kan-Sun Dryer Sweep.</u>

## APPENDIX F



**Sukup Supplemental Sealed Exhibits (d/e 543)**, Exhibit 200, **Letter from David Morrison to Charles Sukup dated May 23, 2005,** attached Drawing.

APPENDIX G



<u>Sukup Supplemental Unsealed Exhibits (d/e 547)</u>, Exhibit 202, <u>Letter from Timothy Zarley to William Cunningham dated June 3, 2005</u>, attached Drawing of Kan-Sun Design.

# APPENDIX H



<u>Sukup Supplemental Sealed Exhibits (d/e 543)</u>, Exhibit 203, <u>Drawing of Design C attached to Email from Charles Sukup to David Morrison dated June 23, 2005</u>

APPENDIX I



<u>Sukup Supplemental Unsealed Exhibits (d/e 547)</u>, Exhibit 210, <u>Letter from Timothy Zarley to William Cunningham dated August 23, 2005</u>, attached photograph S00001.