IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE GSI GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3011 |
| | ) | |
| SUKUP MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff GSI Group, Inc.'s (GSI) Motion for Partial Summary Judgment Against Sukup's Third Affirmative Defense of Laches (d/e 411) (Motion 411). GSI has alleged that Defendant Sukup Manufacturing Co. (Sukup) infringed on the following patents held by GSI: U.S. Patent No. 6,076,276 (276 Patent), U.S. Patent No. 6,073,367 (367 Patent), U.S. Patent No. 6,073,364 (364 Patent), and U.S. Patent No. 6,233,843 (843 Patent) (collectively the Tower Dryer Patents) covering various aspects of a sweep grain unloading device used in GSI's tower grain dryers (Count I); U.S. Patent 5,135,271 (271 Patent) covering a latching device with an improved pin design for grain bin doors

Count II); and U.S. Patent 5,400,525 (525 Patent) covering a flame cone in a grain bin heater (Count III).  GSI also alleges that Sukup engaged in unfair competition in violation of the Lanham Act, the Illinois Uniform Deceptive Practices Act and Illinois common law.  <u>Third Amended Complaint for Patent Infringement and Unfair Competition (d/e 129) (Third Amended Complaint), Counts IV, V, VI, and VII</u>.

Sukup's Third Affirmative Defense alleges the defense of laches. <u>Defendant Sukup Manufacturing Co.'s First Amended Answer, Affirmative Defenses and Counterclaims and Demand for Jury Trial in Response to Plaintiff's Third Amended Complaint (d/e 161)</u>.  GSI now seeks summary judgment on this defense.  For the reasons set forth below, Motion 411 is ALLOWED in part.  Motion 411 is allowed as to the laches affirmative defense to the patent infringement claim of the 271 Patent in Count II and to the unfair competition claims in Counts IV, VI, and VII.  Motion 411 is denied as moot as to the claims of infringement of the Tower Dryer Patents and the 525 Patent in Counts I and III because GSI is precluded from seeking damages for past infringement of those patents.  Motion 411 is also denied as moot as to the deceptive practices' claim in Count V because the Court already entered partial summary judgment in favor of Sukup on this

claim. Opinion entered October 28, 2008 (d/e 745), at 21-22.

## TOWER DRYER PATENTS AND 525 PATENT

The Court has already entered partial summary judgment in favor of Sukup and against GSI to the extent that GSI is not entitled to recover damages for past infringement of the Tower Dryer Patents and the 525 Patent in Counts I and III. Text Order entered July 19, 2006. The defense of laches is only available against claims for damages for past infringement. Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir. 1975). Motion 411 is, therefore, denied as moot with respect to Counts I and III because GSI is already precluded from recovering any damages for past infringement alleged in these Counts.

## STATEMENT OF FACTS

The 271 Patent covers the latching mechanism and improved pin design for grain bin doors (GSI Bin Door). GSI filed its patent application for the 271 Patent to the Patent and Trademark Office (PTO) on June 14, 1991. See Opinion entered September 11, 2008 (d/e 667) (Opinion 667), at 2-14 (a detailed discussion of the invention covered by the 271 Patent and the history of the patent application).

In 2001, Sukup started marketing its grain bin door with the accused

latching device and pin (Sukup Bin Door). Id., at 15. In August 2001, Sukup publically displayed the Sukup Bin Door at the Farm Fest Show in Redwood Falls, Minnesota. Sukup Supplemental Unsealed Exhibits (d/e 547), Exhibit 251, Declaration of Charles Sukup dated February 6, 2006, ¶ 29. Representatives of GSI consistently attended such farm shows. Id., ¶ 30. GSI's General Manager Burl Shuler became aware of the Sukup Bin Door shortly after its introduction to the marketplace because Sukup began showing the Sukup Bin Door at trade shows. Sukup Supplemental Sealed Exhibits (d/e 543), Exhibit 177, Deposition of Burl Shuler dated October 27, 2005, at 108. Shuler was aware of comments that the Sukup Bin Door was extremely similar to the GSI Bin Door. Id.

Shuler states that GSI suspected that the Sukup Bin Door infringed on the 271 Patent, but was not able to gain access to the Sukup Bin Door until mid 2003. According to Shuler, GSI did not determine that the Sukup Bin Door infringed on the 271 Patent until October 2003. Motion 411, Exhibit 1, Declaration of Burl Shuler, ¶ 11-13. GSI stated in its discovery responses that it did not file suit against Sukup in 2003 because of the high cost of litigation. GSI stated that once it determined that Sukup was also infringing on the Tower Dryer Patents in late 2004, it decided that the cost

4

of litigation could be justified.  <u>Sukup Supplemental Unsealed Exhibits</u>, Exhibit 229, <u>The GSI Group, Inc.'s Third Response to Sukup Manufacturing Co.'s Interrogatory No. 7</u>.

GSI filed suit on January 19, 2005.  Shortly thereafter, Sukup twice redesigned its pins in the Sukup Grain Bin Door.  The designs changed the pin from a two-piece design, in which the pin was attached to the wall of the grain bin by a separate bolt, to a one-piece design that incorporated a threaded shaft at the end of the pin.  <u>See</u> <u>Opinion 667</u>, at 15-16, and Appendices H, I, and J, for a discussion and depiction of the changes.

Beginning in January 2005, Sukup started distributing materials containing specifications for its tower dryers.  In February 2005, GSI sales representative Gary Kinder received a copy of the Sukup specification materials.  <u>Sukup Supplemental Sealed Exhibits</u>, Exhibit 181, <u>Deposition of Gary Kinder</u>, at 142.  By October 2005, GSI personnel believed that most of the specifications had been copied from GSI brochures.  <u>Sukup Supplemental Sealed Exhibits</u>, Exhibit 246, <u>Email dated October 27, 2005, from David Morrison to Gary Kinder</u>.  On July 27, 2006, GSI took the deposition of Randy Coffee.  Coffee at that time confirmed that Sukup had copied the specifications from GSI material and placed those figures on

Sukup sales material as estimates of the specifications for Sukup tower dryers. Plaintiff's Opposition to Defendant's Motion for Reconsideration of the Court's September 25, 2006 and November 27, 2006 Text Orders Allowing GSI to File Second and Third Amended Complaints (d/e 270) (d/e 285), Exhibit 1 (d/e 286), Deposition of Randy Eugene Coffee dated July 27, 2006, at 60-61.

On August 2, 2006, GSI's counsel announced in open court at the Markman hearing that GSI had learned in discovery that Sukup copied the Zimmerman Grid and would be filing an amended complaint alleging unfair competition. Sukup Supplemental Unsealed Exhibits, Exhibit 244, Transcript of Hearing on August 2, 2006, at 165-66. On September 5, 2006, GSI filed a Motion for leave to file a second amended complaint to add these counts. Motion for Leave to File Second Amended Complaint (d/e 95). The Second Amended Complaint was filed on September 26, 2006. Second Amended Complaint (d/e 97). The Second Amended Complaint added the unfair competition claims in Counts IV-VII. GSI then filed the Third Amended Complaint on November 27, 2006. Third Amended Complaint. The Third Amended Complaint also included the unfair competition claims in Counts IV-VII.

ANALYSIS

At summary judgment, GSI must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Sukup. Any doubt as to the existence of a genuine issue for trial must be resolved against GSI. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once GSI has met its burden, Sukup must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Laches is an affirmative defense; thus, Sukup bears the burden of proving the defense at trial.

The defense of laches is an equitable defense that is committed to the sound discretion of this Court. To establish the affirmative defense of laches, Sukup must present evidence that: (1) GSI delayed in filing suit an unreasonable and inexcusable length of time after GSI knew or reasonably should have known of its claim against Sukup, and (2) the delay resulted in material prejudice or injury to Sukup. Gasser Chair Co., Inc. v. Infanti

7

Chair Mfg. Corp., 60 F.3d 770, 773 (Fed.Cir. 1995); A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1028 (Fed.Cir. 1992).

When viewed in the light most favorable to Sukup, the evidence indicates that in 2001 GSI knew or reasonably should have known the information on which GSI concluded that the Sukup Bin Door was infringing on the 271 Patent. GSI had the opportunity to inspect the Sukup Bin Door in 2001 at the Farm Fest Show. Burl Shuler was aware of the Sukup Bin Door in 2001 and was told that it was very close to the GSI Bin Door covered by the 271 Patent. GSI elected not to sue until 2005 due to the cost of litigation. This reason may be reasonable or may not. That is an issue of fact.

Sukup, however, fails to present any evidence of prejudice. Prejudice may be evidentiary or economic. Aukerman, 960 F.2d at 1033. Evidentiary prejudice occurs when evidence is lost due to delay. Id. Sukup has presented no evidence that it lost evidence as a result of the delay. Economic prejudice occurs when a party changes its economic position as a result of the delay. "Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit." Id. at 1033 (citations omitted).

Sukup has not presented any evidence that it changed its position economically from 2001 to January 2005, as a result of GSI's delay. Sukup states that after the suit was filed, it quickly changed its pin design to avoid infringement. Those changes occurred after suit was filed; the evidence is irrelevant to the issue of whether Sukup changed its position economically before suit. Sukup, however, argues from its post-filing actions that "GSI should not be allowed to wait silently while $5.3 million in alleged damages accrue where Sukup, upon notice of infringement, quickly and easily changed to a non-infringing pin." Defendant Sukup Manufacturing Company's Response to Plaintiff's Motion for Partial Summary Judgment Against Sukup's Third Affirmative Defense of Laches (d/e 411) (d/e 523), at 17-18. The $5.3 million to which Sukup refers is the alleged liability for infringement. Id. at 18, n. 6. The accrued liability from the infringement is not economic prejudice for purposes of laches defense. Aukerman, 960 F.2d at 1033. Sukup presents no other evidence of prejudice. GSI, thus, is entitled to partial summary judgment on Sukup's affirmative defense of laches to the infringement claim on the 271 Patent in Count II.

GSI is also entitled to partial summary judgment on the defense of laches to GSI's unfair competition claims in Counts IV, VI, and VII. These

9

claims are all based on materials Sukup produced which contained specifications for Sukup tower grain dryers. Sukup produced these materials in late 2004 or 2005. GSI personnel secured a copy of some of these materials in February 2005. By October 2005, GSI personnel believed that Sukup had copied its specification from one of GSI's tower dryer brochures. In discovery, GSI sought the deposition of Randy Coffee, the Sukup employee responsible for developing the Sukup specification materials. That deposition occurred on July 27, 2006. Coffee confirmed that Sukup copied the GSI specifications. On August 2, 2006, GSI announced in open court that it intended to add unfair competition counts to its Complaint. It did so on September 26, 2006, by filing the Second Amended Complaint.

      The Court determines, in the exercise of its sound discretion, that, under these circumstances, the delay was not unreasonable and inexcusable. GSI had information to file the counterclaims in late 2005 and should have done so then. See <u>Opinion entered July 3, 2007 (d/e 292)</u>, at 2-3. GSI, however, waited until Coffee confirmed at his July 2006 deposition that Sukup had copied GSI's dryer specifications. GSI acted promptly after receiving that confirmation. GSI, thus, created a delay by electing to wait for the Coffee deposition to confirm the copying, but the delay was not

inexcusable for purposes of the laches defense.

THEREFORE, Plaintiff GSI Group, Inc.'s Motion for Partial Summary Judgment Against Sukup's Third Affirmative Defense of Laches (d/e 411) is ALLOWED in part. The Court enters partial summary judgment in favor of Plaintiff GSI Group, Inc., and against Defendant Sukup Manufacturing Company with respect to Sukup's Third Affirmative Defense of laches to Counts II, IV, VI, and VII of the Third Amended Complaint. GSI's Motion is denied as moot as to Counts I, III, and V of the Third Amended Complaint.

IT IS THEREFORE SO ORDERED.

ENTER: October 29, 2008

FOR THE COURT:

                                                  s/ Jeanne E. Scott
                                                  JEANNE E. SCOTT
                                      UNITED STATES DISTRICT JUDGE